### INGERSOL *against* KNOWLTON.

*A*, by his will, gave his wife certain personal property and the use of one third of his homestead, and then devised to his daughter *S.* the use of two thirds

*Fairfield*,
June, 1843.

Ingersol
*v.*
Knowlton.

of his homestead, so long as she remains single and her mother lives; and at her mother's decease, said homestead to be sold, by the executors, if they think best, and the avails go to said *S.*; if not sold, the use to be to her, for her benefit. The testator's wife died a short time before his death; and his daughter *S.*, after that event, intermarried with *B.* The homestead was not sold, by the executors. In ejectment brought by *D.*, a son of the testator, and a residuary devisee, against *B.*, claiming in right of his wife the entire interest in the homestead, it was held, that *S.*, under the will, took, not merely an estate while she remained single and her mother lived, but an estate in fee.

THIS was an action of ejectment for a tract of land, with a dwelling-house and out-houses thereon.

The cause was tried at *Danbury*, *September* term, 1842, before *Waite*, J.

*Simon Ingersol* was the owner in fee of the demanded premises, and died seised thereof, in the month of *January*, 1828, leaving *Alton Ingersol*, (the plaintiff,) *Alexander S. Ingersol*, *John J. Ingersoll* and *Sarah Ingersol*, now the wife of the defendant, his only children and heirs at law. The wife of the testator died a few days previously, but after he had made his will. *Sarah Ingersol*, after the death of her father, intermarried with the defendant, who, soon afterwards, entered upon the demanded premises in right of his wife, claiming title to the whole, and reserving to himself the rents and profits thereof. That he had ousted the plaintiff, and was in possession, claiming title, at the service of the writ in this suit, were admitted facts.

For the purpose of proving his title, the defendant read in evidence the will of *Simon Ingersol*, dated the 11th of *December*, 1827, which was duly proved and established. By this instrument, the testator, in the first place, made provision for his wife, by giving her certain personal property, and "the use of one third of the place where I now live, together with the use of one third of the buildings standing on said tract," and the use of certain other real estate. He then made provision for each of his sons; after which he proceeded thus: " I give to my daughter *Sarah Ingersol*, the use of two thirds of my homestead where I now live, together with the use of two thirds of the buildings, so long as she remains single, and her mother lives; and at her mother's decease, said tract— the whole of it—to be sold, by my executors, if they think best, and the avails of it to go to the said *Sarah*; otherwise, if not sold, the use to be to her, for her benefit: Also, one half

of my timber land lying *West* of *Thomas Ferris,* I order my executors to sell, and pay over to the said *Sarah ;* and the other half, together with the *Ebenezer Reynolds* place and *Frederick Austin* place, I order my executors to sell and pay over to the said *Sarah.* I also give to my said daughter *Sarah* the use of my right in the lot and store I own in company with *Solomon Ingersol,* situate in the city of *New-York,* at *New Slip.* The use and improvement of the said lot and store, to go to the said *Sarah,* during her natural life, under the direction of my executors, and at her decease, to go to her heirs." After making some provision for two grandchildren, the testator then gave " the rest and residue of his estate that he had not named" to his children, to be equally divided among them, and appointed his son, *John J. Ingersol,* and *David Wood,* his executors.

The tract of land described in the will as the testator's homestead, has not been sold by his executors. The defendant claimed, that under the will, *Sarah* took a fee in this tract, being the demanded premises ; or if not a fee, an estate for life ; and that in either case, the plaintiff could not recover ; and the defendant prayed the court so to instruct the jury. The plaintiff contended, that *Sarah,* under the will, took an estate in the demanded premises *while she remained single,* and no longer ; and that upon her marriage with the defendant, the fourth part thereof vested in the plaintiff, either as heir at law, or as residuary devisee ; and he prayed the court so to charge the jury.

The court charged the jury in conformity with the claim of the defendant, and directed them to return a verdict in his favour.

The jury returned a verdict for the defendant, accordingly ; and the plaintiff moved for a new trial for a misdirection.

*Bissell* and *Mitchell,* in support of the motion, contended, That the homestead, upon the marriage of *Sarah,* goes to the children of the devisor equally, either as heirs at law, or as devisees under the will. This depends upon the intent of the testator, to be derived from the language of the will. He first gives to *Sarah* the use of two thirds, so long as she remains single, and her mother lives. Her right to any portion of it, depends, during her mother's life, upon her remaining

*Fairfield,*
June, 1843.

Ingersol
*v.*
Knowlton.

single.　　This limitation of the two thirds, *dum sola*, goes through, and controuls the subsequent limitation.　　The words "the use to be to her," are limited by what precedes—*i. e.* "so long as she remains single."　　*Whitmore* v. *Trelawny,* 6 *Ves.* 129.　　2 *Burr.* 920.　　*Compton* v. *Compton,* 9 *East,* 372.　　The estate in the subsequent clause of the will is not limited to the devisees *for life,* nor for any definite period. Had the mother remained in life, there can be no doubt that the interest of the devisee in the two thirds, would have terminated upon her intermarriage.　　Suppose she had married during the life of her mother, and she had afterwards died; would the right of the devisee to the whole have *revived?* Could such have been the intent of the testator?　　Is it not apparent, so far as this devise is concerned, that it was the object of the testator to make a provision for his daughter, while she remained single?　　It was not his intention that this property should be subject to the controul of any husband, with whom she might intermarry.　　The use is to be for *her benefit.*　　If he meant to give her the use for life, the presumption is, that he would have so expressed himself.　　He has done so, in a clause which almost immediately follows this.　　Can any reason be assigned, why the testator should have formed one intent in regard to the two thirds, and a different intent in regard to the whole?

It is, however, said, that he gives her the avails of the whole, provided the executors see fit to sell.　　This construction may well be doubted.　　Admitting it, however, to be correct, still the argument derives no aid from it.　　If the executors do not sell, the use only is given; and the only question is, for how long?　　Is it during life; or while she remains single?　　The construction claimed by the plaintiff renders the whole will consistent.

*Hawley,* contra.　　The devise to the testator's wife, was during her life only.　　The intent was to give her, during her life, a *home,* where she could not be molested, by the husband and children of *Sarah.*　　The two thirds devised to *Sarah,* during her mother's life, were subject to the condition of her remaining single, for that purpose only.　　It was merely for her mother's protection.　　The clause "so long as she remains single, and her mother lives," is a limitation attached to the

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

Ingersol
*v.*
Knowlton.

two thirds only. No limitation is attached to the disposition after her mother's death. There is then, a new, unqualified disposition of the whole. The object was to give *Sarah* all, subject to the provision of her mother ; otherwise, why did the testator direct all to be kept during the mother's life, and authorize the sale of both, on her death ? The testator, having attached two conditions—her remaining single, and her mother's life—to the two thirds, at the mother's death, drops both, and makes an entirely new disposition. The sole object of the limitation being then gone, he disposes of the estate, without reference to either. The testator's omission to attach the condition to the disposition of the whole, (he having attached it to the two thirds, during the mother's life,) shows, he intended an unconditional bequest after her death. Did he intend to provide for *Sarah* only, regardless of her children ? *Wright* v. *Barrett,* 13 *Pick.* 41.

The executors have power to sell—the avails to go to her absolutely ; for a general bequest gives the entirety. If unsold, the use is to be to her, for her benefit. He surely intended as great an interest, if unsold, as if sold. The avails of two thirds of the timber-land, are to be to her, absolutely. The avails of the homestead are given in the same way, showing her estate in one, to be the same as in the other. The testator could not have intended that the amount of her interest should depend on the whim, caprice, or even the discretion of the executors. The whole interest was intended ; for nothing is given over, on her death. In other devises, the testator gives over, on the death of the first taker.

It makes no difference as to the result of this case, whether *Sarah* has a fee, or only a life estate ; but the use being unlimited, she has the fee. *Cook* v. *Gerrard,* 1 *Saund.* 186. *Co. Litt.* 4. 6. *Shep. Touch.* 437. *Crui. Dig. tit. Devise. c.* 10. *s.* 68, 9. *c.* 11. *s.* 15. *Reed* v. *Reed,* 9 *Mass. R.* 372. The testator *exhausts* each part of the estate, as he goes along, before he comes to the residuary clause. That clause embraces " what he has not before named ;" showing clearly, that he had made an *entire* disposition of what he had named. When he means to give less than an absolute estate, he says so.

Hinman, J. The only question in this case, arises upon the construction of the will of *Simon Ingersol ;* and the ques-

tion is, as to the estate which his daughter *Sarah*, now the wife of the defendant, took, in that part of his estate, called *the homestead.* If, as the plaintiff claims, she took only an estate while she remained single, and her mother lived, then the construction given to the will, by the court below, was wrong, and a new trial should be had ; but, if she took either an estate for life, or any greater estate, then the judgment is confessedly right.

*Fairfield,*
June, 1843.

Ingersol
*v.*
Knowlton,

The question depends upon the intention of the testator, to be collected from the whole will, by the aid of such settled rules of construction, as are applicable to the case.

That part of the will containing this devise to *Sarah*, is certainly very inartificially drawn up ; but we think there would be more difficulty, in determining, precisely, what object the testator had in view, by so limiting the estate, that, in the event of her marriage during the life-time of her mother, her interest in it was to be suspended until her mother's death, than there is, in determining what interest he intended she should have in the premises after her mother's death. Upon this, the only material enquiry, we do not think there is much doubt or difficulty.

The words of the will are, " I give to my daughter *Sarah Ingersol*, the use of two thirds of my homestead where I now live, together with the use of two thirds of the buildings, so long as she remains single and her mother lives." If the testator had stopped here, the meaning, beyond all doubt, would have been in conformity to the plaintiff's claim, and she would have taken, at most, only an estate during her mother's life ; and her marriage would have defeated even this. But the testator goes on and adds, " and at her mother's decease, said tract, the whole of it, to be sold, by my executors, if they think best, and the avails of it to go to the said *Sarah ;* otherwise, if not sold, the use to be to her for her benefit." It is clearly the duty of the court, to give effect to the whole will, and all the words contained in it, if it can be done ; and the words are all to be considered, in order to ascertain the intention of the testator. But the construction contended for, by the plaintiff, would demand of us the total disregard of the two last provisions in this devise to *Sarah.* By this last provision, the executors had power to sell this property ; but the moment they sold, the avails all belonged to *Sarah*, abso-

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

Ingersol
*v.*
Knowlton.

lutely; and this is wholly irrespective of her remaining single, or not.    The only restriction there is upon the power of the executors, is, that they could not sell during the life-time of the mother.    If there could be any importance attached to the discovery of the objects of the testator, in limiting *Sarah's* two thirds of the homestead, first given to her, in the manner he has done, it might not, perhaps, be an improbable conjecture, that, as in the same will, he had given the use of one third of these premises to his widow for life, he did not intend that *Sarah* should have it in her power, by her marriage, to bring into the family mansion, a family, to the inconvenience of her mother, during her life.    However this may be, it is very clear, that immediately on the decease of his widow, *Sarah* was to have the whole avails of this property, if sold, but if not sold, the use was to be to her for her benefit.    And this last provision, we think, gives to *Sarah* the fee in this property.    In case the executors sold the property, we have already seen, that *Sarah* should have the avails, absolutely. Now, it would be very extraordinary in the testator, to authorize the sale of this property, and give the avails absolutely to his daughter, when sold; and yet limit her to a life estate in the realty, if the property should remain unsold.

The testator, doubtless, could do this, if he chose; and courts would be bound by his pleasure, in this respect.    But they must require, and ought to require, that in such a case, his meaning should be plainly and unequivocally expressed. But the testator has intimated no such meaning, provided this property was not sold; but, on the contrary, has given the use to *Sarah* for her benefit.

The inference from the use of this language, in connexion with that immediately preceding it, and in which he had given the avails of this property to *Sarah*, absolutely, if sold, is very strong, that he intended, by the words, "use to be to her for her benefit," that she should take as great an estate in the realty as he had given her in its avails, if sold by the executors.    And when it is considered, that one of the executors was a son and heir of the testator, and one of his residuary legatees, of course interested not to sell, if by so doing the property would eventually fall to him, the inference is irresistible, that the testator could not have intended the creation of such a trust, and connected with it, in the same instrument,

such an interest in the trustee, as would leave it morally certain, that the trust would not be executed.

We are, therefore, of opinion, and advise the superior court, that no new trial should be granted.

In this opinion the other Judges concurred.

New trial not to be granted.