## Mary E. Goodell v. Daniel B. Hibbard, Jr., and another.

*Wills: Construction: "Heirs:" Issue.* The word "*heirs*" is construed to denote issue in a will granting a residuary devise to the testator's sister "and her *heirs* forever; and in failure of *heirs* all to fall and be bequeathed to the minor children" of a deceased brother named, where it appeared that such sister and the testator were both unmarried and lived together with their mother when the will was made and until the testator died, and that he had five brothers and one sister, besides the devisee named, living when the will was made, and also, besides the minor children of the deceased brother named in the will, above twenty nieces and nephews, all of whom survived him; giving this word such a construction makes all parts of the will operative in a mode in perfect harmony with what may be fairly considered as the meaning of the testator.

*Will construed.* The circumstance that the will provided that the sister named as such devisee should support the mother and pay the minor children named fifty dollars within a week after the testator's death, where she had received a bequest of certain personal estate also, cannot prevail to enlarge the sister's estate in the realty against the clear purpose of the will.

*Devise construed: Limitation.* Such a devise will not be construed as giving the sister an estate in fee defeasible in the event of failure of heirs or issue during the lives of the minor children mentioned, thereby rendering the limitation over void.

*Devise: Estate tail: Remainder: Contingent limitation.* This devise, considered in the light of the facts of the case and in connection with the other provisions of the will, is construed as designed to grant to the sister named what at common law would be an estate tail, with remainder over to the minor children named, in the event of her dying without issue of her body; and under our statutes (*Comp. L. 1871*, §§ *4070-1*), though estates tail are abolished, such a remainder would be valid as a contingent limitation upon a fee, and would vest in possession on the death of the first taker without issue living at the time of such death.

*Devise: Limitation: Remoteness: Indefinite event: Remainder: Contingency.* This limitation over to the minor children named is not open to the objec-

tion that it is too remote for the reason alleged, that it contemplates failure of issue as the event at some indefinite future time; but, on the contrary, the time fixed for the failure of issue of the sister is at her death, and the event contemplated was the death of such sister, the first taker, without children living; and the vesting of the remainder in possession is upon the contingency of the death of the first taker without issue then living, and pending the life of one or more of the children mentioned as second takers.

*Devise: Rule against perpetuities.* The terms and sense of this devise necessarily excluded all chance of infringement of the rule against perpetuities, and hence it was not subject to valid objection on that score.

*Identity: Names.* In the absence of circumstances to cast doubt upon the fact of identity, the identity of name is enough to raise a presumption of identity of person.

*Contingent estates: Alienation: Deed of bargain and sale.* A future contingent estate is alienable in the same manner as an estate in possession, and may be conveyed by a deed of bargain and sale without covenants.

*Heard April 23.     Decided April 27.*

Error to Wayne Circuit.

*D. B. & H. M. Duffield,* for plaintiff in error.

*Kane & Hibbard,* in person, and *S. T. Douglass,* for defendants in error, cited, *Pickering v. Towers, 1 Eden, 142 and note; Haley v. Boston, 108 Mass., 576; Bundy v. Bundy, 38 N. Y., 410; Prindle v. Beveridge, 7 Lans., 225; Covert v. Robinson, 46 Penn. St., 274; Seeley v. Seeley, 44 Ib., 434; Jones v. Miller, 13 Ind., 337; 4 Com. Dig., 168; 1 Cowp., 234; 6 Taunt., 485; 2 T. R., 720; 3 Call., 342; 3 Wash. C. C., 369; Tator v. Tator, 4 Barb., 431; 12 Wend., 83; 17 Wend., 393.*

GRAVES, CH. J:

This was ejectment by defendants in error to recover five-sixteenths of certain lands in Ecorse. By direction of the court the jury found for the plaintiffs in ejectment, and defendant in ejectment brought error, and the case comes before us on a bill of exceptions.

The claims to the land on both sides depend ultimately upon the last will of one Peter Goodell, and the exact nature of the controversy will more clearly appear upon an inspection

of the whole will, in the light of the material facts, which are shown by stipulation.

The will reads as follows:

"In the name of God—Amen.

"I, Peter Goodell, of the township of Ecorse, in the county of Wayne, and state of Michigan, of the age of thirty-seven years January last, and being of sound mind and memory, do make, publish and declare this my last will and testament in manner following, that is to say:

"*First,* I give and devise to my brother, Gillard Goodell, twenty-five acres from off the north part of all that tract or parcel of land situated in the township of Ecorse, county of Wayne, and state of Michigan, belonging to me, as specified in two several deeds, one of which is between Mr. Visger and I, the other between Mr. Daniel Goodell and I, together with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining; to have and to hold the premises above described to the said Gillard Goodell and his heirs, *if any,* forever, *but in failure of any heirs, to fall to my sister, Betsey Goodell, or her heirs.*

"*Second,* I give and devise *all the rest, residue and remainder* of my *real and personal estate,* of every name and nature whatsoever, to my said sister, Betsey Goodell, together with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining; to have and to hold the said premises, which is described in several deeds, to the said Betsey Goodell and *her heirs, forever; and in failure of heirs, all to fall* and *be bequeathed to the minor children* of Alexander Goodell, now deceased, and the said Betsey Goodell is *bound by this* said *instrument* to *provide,* support and maintain, during the natural period of her life, my mother, Axey Goodell, as also, in case of her decease, to provide for the decent interment of her, together with all the expenses appertaining thereto.

"*Third,* I give and bequeath the sum of fifty dollars, to be paid by my said sister, Betsey Goodell, within *one week*

32 MICH.—7.

after my decease, to the minor children of the said Alexander Goodell.

"In witness whereof I have hereunto set my hand and seal this twenty-third of January, in year of our Lord one thousand eight hundred and forty-nine.

(Signed)          "PETER GOODELL."

Then followed a proper attestation clause with three witnesses.

The stipulation as to facts contained the following matters:

*First,* That Peter Goodell, late of Ecorse, Wayne county, Michigan, was, at and before the time of his death, seized and possessed in fee simple of the premises set forth in the plaintiffs' declaration in this cause.

*Second,* That Peter Goodell died at Ecorse in April, 1849, testate, leaving a last will and testament, a copy of which is given. It was duly proved and admitted to probate in the probate court for the county of Wayne, and recorded with the register of deeds for such county.

*Third,* At the time of his death said Peter Goodell left him surviving *five brothers,* to-wit: Daniel, Andrew, Jonas, Gaylord or Gillard (the last named being one of the devisees named in the will) and Elijah; a sister, Betsey Goodell (also a devisee in said will named), and *three nieces and one nephew, the children of a deceased brother, Alexander Goodell* (said children and said Alexander Goodell also named in said will); also a sister named Maria Goodell.

*Fourth,* That the said children of Alexander Goodell were born at the respective dates following, to-wit: Laura J. Goodell, born July 23, 1839; Lucille J. Goodell, born May 11, 1842; Harriet J. Goodell, born January 8, 1845; *Frank A. Goodell,* born March 17, 1847; that all of the above named children are now living, except Harriet J. Goodell, who died in 1867, unmarried, without issue, and intestate.

*Fifth,* That the premises described in the declaration are part of those devised to said Betsey Goodell in said will of Peter Goodell; that on his death she went into possession thereof, and

continued in possession up to the time of her death, *which took place March 14, 1874;* that from the time of her death the defendant (Mary E. Goodell) has been in possession and is so now.

*Sixth,* That when said Peter Goodell died he *was thirty-seven years old; that up to the time of his death, and for several years before, said Betsey Goodell, and the mother of said Peter Goodell, lived with him* (the said Peter Goodell) on the premises devised in the said will; that said *Peter Goodell and said Betsey Goodell were, never married,* and that the said Betsey Goodell died intestate; that when said Peter Goodell died he left several brothers and sisters who had children living, as follows, to-wit: Daniel Goodell had four children; Andrew Goodell had five children; Jonas Goodell had six children; Maria Ferguson had seven children; Elijah Goodell had several children; Gaylord or Gillard was not married up to the time of said Peter Goodell's death; that the said *Alexander Goodell* died in an insane asylum at Utica, in the state of New York, in 1848; that at his death he left no property to his family.

*Seventh,* That the mother of Laura J. Goodell, Harriet J. Goodell, Lucille J. Goodell and Frank A. Goodell, children of Alexander Goodell, deceased, is living, and that *Betsey Goodell,* sister and devisee of Peter Goodell, died without ever having had any children.

The plaintiffs in ejectment base their title upon a conveyance to them by one Frank A. Goodell, who, they insist, became entitled under the second clause in the will as one of the children there mentioned of Alexander Goodell; and the defendant in ejectment claims as heir at law of Betsey Goodell, the devisee named in the same clause. And the position of the plaintiffs in ejectment is, that under the provision of the will the realty disposed of by the second clause wholly passed on the death of Betsey Goodell without issue, to Frank A. Goodell and the other children of Alexander Goodell; that the gift under that clause to Betsey Goodell, if not hindered by the statute, would have been an

estate tail, with remainder to the children of Alexander Goodell, upon her dying without issue. On the other hand, the first ground of the defendant in ejectment is, that the devise in question to Betsey Goodell gave to her an absolute estate of inheritance, and in support of this view it is urged, that by comparing the different parts of the will an intention will be discovered to give her an estate larger than for life, and that the word "heirs," as twice used in the second clause, cannot be construed to mean children, because the will imposes a personal charge upon the devisee: *first*, to take care of the testator's mother; and *second*, to pay fifty dollars to the children of Alexander Goodell.

The counsel for the other side urge in reply, that this second clause must, if possible be so interpreted as to give all parts of it sensible effect, and they insist that it must have been the testator's intention that in some future possible contingency "all the estate" should go to the children of Alexander Goodell; because, if such had not been the intention, the testator would not have taken care to devise "all" over to them; that the word "heirs," in the positions it is made to occupy, cannot possibly be read in the technical sense as contended for, because to do so would inevitably defeat all chance for the passage of the estate to Alexander Goodell's children; since in consequence of their relation to Betsey Goodell, *she*, in case they should survive her so as to take at all, would have heirs at law in *them*, whereby, according to the argument, their right to take would be defeated.

Upon the general question of intent to be ascertained from the face of the will and the extrinsic facts, which may be rightly consulted, it is urged that the evidence is very strong to show that the testator must have contemplated that it would be certain that his sister Betsey would leave persons other than the children of his brother Alexander so related to her that they would be her heirs at law, and hence it would be very unreasonable to suppose he used the word "heirs" in a sense sufficiently broad to nullify the provisions for his brother's children; that the only safe and prac-

tical view to take is to suppose that the word "heirs" was used to denote "issue," whereby all parts of the clause in question, and of the whole will, are made operative, and in a mode in perfect harmony with what may be fairly considered as the meaning of the testator.

This exposition appears to the court to be sound. It is founded in strong reason and supported by the facts. The circumstance that Betsey Goodell was required to support the testator's mother and pay fifty dollars to the children of Alexander Goodell within a week after the testator's decease, is not sufficient to break the force of the reasoning and lead to the view taken on the part of the defendant in ejectment.

In the first place it may be observed, that this second provision for the children of Alexander Goodell shows that they were much in the testator's mind, and it goes to favor the opinion that the provision in their behalf in the second clause was not a fugitive arrangement hardly expected to be efficacious, but a serious and meditated provision, which, in view of his sister's age and celibacy and prospects, the testator believed would in the near future turn to be valuable bounty.

It will be noticed that the testator gave his sister Betsey more or less personal estate, the amount of which, however, does not appear. But it is not unreasonable to suppose that it exceeded fifty dollars, the sum he required should be paid within a week after his death to Alexander's children, and as no express or implied reference is made to the realty in connection with this direction, and the time for payment was so short, the inference is strong that more than sufficient personalty available for the purpose of meeting this gift was bestowed upon his sister Betsey, and that he intended payment out of that property.

The provision for the support of the testator's mother is not sufficient to prevail against the clear purpose of the will, and enlarge the sister's estate.

The reasons are too strong to allow the provision in question, if admitted to be a charge, and of which there is much

room for doubt, to work an entire change in the quality of the estate as we are compelled to think it was marked out by the testator.—*East v. Twyford, 4 H. L. Cas., 517; Doe ex dem. Hanson v. Fyldes, Cowp., 834; Mesick v. New, 3 Seld., 163.*

Passing the point just considered, it is insisted for the defendant in ejectment, that the devise to Betsey Goodell must, at the least, be taken as giving her an estate in fee, defeasible in the event of failure of heirs or issue during the lives of the minor children of Alexander Goodell, and not as giving what at common law would be an estate tail, vested or contingent, and that the limitation over is void.

We cannot yield to this view. This aspect of the case has been somewhat touched upon already.

When we survey the circumstances, and consider how many near relatives, old and young, the testator had, and who might become, and many of whom in all human probability must become, heirs at law of Betey Goodell, and then read the will in the light of the facts, and notice that the testator contemplated that some of these individuals would survive her, we cannot believe that in using the word "heirs" he intended to denote persons who would not be issue of her body; and hence we are driven to the conviction that he designed to give her what at common law would be an estate tail, with remainder over to the children of Alexander Goodell in the event of her dying without such issue.—*Harris v. Davis, 1 Coll. Ch. Cas., 416; 1 Spence E. J., ch. 8: Sams v. Garlick, 14 M. & W., 698,* and cases cited in brief for defendants in error.

Although estates tail are abolished, the statute has given to what would otherwise be such an estate the force of an estate in fee simple (§ *4070, C. L.*), and has provided that when a remainder is limited upon what, if an estate tail were permitted, would be such an estate, "such remainder shall be valid as a contingent limitation upon a fee, and shall vest in possession on the death of the first taker without issue living at the time of such death."—§ *4071, C. L.*

These regulations have an important bearing upon the devise in question, and in connection with others presently to be noticed, relieve the case from perplexities which might otherwise attend it.

It is further contended that if the gift to Betsey Goodell created a common-law estate tail, still the limitation over to the children of Alexander Goodell was too remote, for the reason, as is said, that it contemplated failure of issue as the event at some indefinite future time. But we think the will fixed the time for the failure of her issue at her death. The event contemplated was the death of Betsey Goodell, the first taker, without children living.—*Stevenson v. Evans, 10 Ohio St., 307; Parish's Heirs v. Ferris, 6 Ohio St., 563; Niles v. Gray, 12 Ohio St., 320; Wadsworth v. Hudson, 8 Conn., 348; Morgan v. Morgan, 5 Day, 517.* And the statute enacts that "when a remainder shall be limited to take effect on the death of any person without heir or heirs of his body, or without issue, the word 'heirs' or 'issue' shall be considered to mean heirs or issue living at the death of the person named as ancestor" (§ *4089, C. L.*); and see *Chancellor Kent's* observation on the effect of these provisions.—*Com., Vol. 4, pp. 280, 281.*

The vesting of the remainder in possession was upon the contingency of the death of Betsey Goodell, the first taker, without issue then living, and pending the life of one or more of the children of Alexander Goodell.

And the terms and sense of the devise necessarily excluded all chance of infringement of the rule against perpetuities.

Betsey Goodell could not die without issue living, and still leave issue to carry the estate indefinitely.

The deed from Frank A. Goodell to the plaintiffs in ejectment was executed in the state prison, and just before the death of Betsey Goodell, and no direct or express evidence was given to identify him as the Frank A. Goodell of the class described in the will as the minor children of Alexander Goodell, deceased, and objection is made for the want of such proof. We think, in the absence of circum-

stances to cast doubt upon the fact of identity, the identity of name was enough to raise a presumption of identity of person.

The general rule is too obvious and well settled to justify the citing of authorities, and no circumstance appears to affect the operation of this rule, unless the fact that the grantor was in state prison should be so considered, and we see nothing in that, standing by itself, which should have any force upon the point.

Lastly, the defendant in ejectment claims that the deed from Frank A. Goodell purports to convey only the estate which he had acquired at its date by virtue of the will of Peter Goodell, and that, being a deed of bargain and sale with no covenant, except of seizin, and made prior to the death of Betsey Goodell, it was inoperative to pass any title.

The estate of Frank A. Goodell, at the date of the deed, was not one in possession for the purpose of *enjoyment.*— § *4074, C. L.* It was, however, a future contingent estate (§ *4080, C. L.*), and therefore alienable in the same manner as estates in possession (§ *4102, C. L.*); and it is not pretended that the deed was not in form sufficient to convey an estate in possession.

As no error is shown, the judgment should be affirmed, with costs.

The other Justices concurred.