368:35 LRA 370

## HORACE SMITH

### *v.*

## SHERMAN T. KIMBELL.

### *Filed at Ottawa October 29, 1894.*

1. WILL—*construction—what words will create a fee in land.* A provision in a will that a certain lot "shall be and become the property of my daughter," naming her, without the addition of words of inheritance, will convey a fee under section 13 of the Conveyance act, though they would not at common law.

2. SAME—*words which import an executory devise.* The further provision, that should the said devisee "die leaving no heirs" the property "shall be divided equally between my sisters," must be sustained, if at all, as an executory devise, and not as a contingent remainder.

3. EXECUTORY DEVISE—*definition—cannot be limited upon a fee.* An executory devise is a limitation, by will, of a future contingent interest in land contrary to the rules or limitation of contingent estates in conveyances at law; but a fee, already granted, cannot be transferred to another by way of remainder.

4. SAME—*when void, as creating a perpetuity.* If the contingency in an executory devise is not fixed within the period of a life or lives in being and twenty-one years and a fraction of a year thereafter, the limitation over is void for remoteness.

5. SAME—*indefinite failure of issue as a contingency—what is and what is not such.* An executory devise which is to take effect upon an indefinite failure of issue in the first taker,—that is, a failure of issue whenever it may happen, without fixing a time within which it must happen,—is void for remoteness; but slight circumstances may be sufficient to indicate a definite time of failure, as on the death of the first taker.

6. SAME—*words held to denote a definite failure of issue.* The contingent words on which an executory devise to certain sisters was limited, after a devise to a daughter, were, that such daughter should "die leaving no *heirs,*" and these words, being equivalent to "die leaving no *children* at the time of her death," denote a definite, and not an indefinite, failure of issue, and such executory devise is therefore valid.

7. SAME—*such words vest a contingent fee, only, in first taker.* Such devise vests a fee in the first taker, (the daughter,) determinable upon her dying without leaving children at the time of her death, and one deriving title through her cannot fulfill his contract to convey an absolute fee.

APPEAL from the Circuit Court of Will county; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. GARNSEY & KNOX, for the appellant:

It is the policy of our law to vest the fee in the first taker, and the intention of the testatrix not to vest the fee in the first taker must be clear from the words of the will itself, to prevent such a vesting. *Leiter* v. *Sheppard,* 85 Ill. 242; *Giles* v. *Anslow,* 128 id. 187; Conveyance act, chap. 30, sec. 13, Rev. Stat.

The words "die without heirs," refer to the death of the devisee in the lifetime of the testatrix, and as the devisee survived the testatrix, the fee simple vested in her. *Quackenbosh* v. *Kingsland,* 102 N. Y. 128; *Stevenson* v. *Fox,* 125 Pa. St. 568; *King* v. *Trick,* 135 id. 568; *Barrow* v. *Barrow,* 38 N. J. Eq. 60; *Mickley's Appeal,* 92 Pa. St. 514.

In determining whether or not a limitation over, such as this, is void for remoteness, as being within the law against perpetuities, the question is whether it *must* vest within the time. If it may or may not, it is void. 4 Kent, 283; *Church in Brattle Square* v. *Grant,* 3 Gray, 142.

.Mr. ASA F. MATHER, for the appellee :

The intention of a testator must prevail in constru-
ing a will, if it is consistent with the rules of law.  *Willis*
v. *Watson*, 4 Scam. 64; *Lunt* v. *Lunt*, 108 Ill. 307.

That intention, gathered from the entire will, must
govern.  *Boyd* v. *Strahan*, 36 Ill. 358; *Funk* v. *Eggleston*,
92 id. 515; *Welsch* v. *Savings Bank*, 94 id. 191.

The gift of an estate in lands may be restricted by
subsequent words.  *Bergen* v. *Cahill*, 55 Ill. 160.

In a will of two repugnant clauses, the later governs.
*Siegwald* v. *Siegwald*, 37 Ill. 431; *Hamlin* v. *Express Co.* 107
id. 443.

If two parts of a will are totally irreconcilable, the
subsequent part is to be taken as an evidence of subse-
quent intention,· and must prevail.  *Rountree* v. *Talbot*,
89 Ill. 246.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court :

This is a bill for the specific performance of a contract
for the sale of real estate, filed by appellant against ap-
pellee.  The bill was answered, and, after hearing had,
the Circuit Court found the equities with the defendant
and dismissed the bill.  The present appeal is prosecuted
from such decree of dismissal.

By the terms of the contract, appellee agreed to pur-
chase lot 3 hereinafter mentioned of appellant for $9000.00,
payable $100.00 in cash and "the balance in twenty days
after receiving an abstract showing good title" in ap-
pellant.  The abstract of title was furnished within the
twenty days, and appellee refused to carry out.the pur-
chase upon the ground that the abstract did not show a
good fee simple title in appellant.  Appellant holds by
deed from Frederick Mohlenpaugh, who received a con-
veyance from Sarah Jane Dustan.  Sarah Jane Dustan,
whose maiden name was Sarah Jane Spears, derived her
title through the will of her mother, Abigail Spears.

There is no question that Abigail Spears had good title, and that appellant owns whatever title was obtained by Sarah Jane Spears, afterwards Dustan, under said will. The questions in dispute arise upon the construction of the will of Abigail Spears, which was executed on January 28, 1854, and, after providing for the payment of funeral expenses, is as follows:

*Second*—My just debts are to be paid, and I appoint Alexander Tuloc, of Joliet, my executor. I also will and direct that forty acres of land lying in Will county, State of Illinois, shall be sold, and after discharging the above expenses, the balance shall become and be the property of my daughter, Sarah Jane Spears. I also direct that lot No. 3, in block No. 21, in Joliet, Illinois, with its appurtenances as deeded to me by David Richards and wife, and also all my interest in the lot of land now occupied by David Wooley, in LaPorte county, State of Indiana, also my interest in the estate of my grandfather, Francis Lucas, shall be and become the property of my daughter, Sarah Jane Spears, and should the said Sarah Jane Spears die, leaving no heirs, I will and direct that all of the above described property shall be equally divided between my sisters, to-wit: Olinda Wooley, Deborah Wooley, Sarah Jane Wooley, Elizabeth Johnson, and it is my wish that my sisters, Deborah and Sarah, shall have the care and charge of my daughter, Sarah Jane Spears."

Abigail Spears died on February 4, 1854, and left her surviving her daughter, the said Sarah Jane Spears, who afterwards married a man named Dustan, and has children living. The will was admitted to probate on February 11, 1854.

What title did Sarah Jane Spears take to the above described lot three (3) under the will of her mother? The testatrix directs, that said lot three, and all her interest in the lot occupied by David Wooley, also her interest in her grandfather's estate, "shall be and become the prop-

erty of my daughter, Sarah Jane Spears." No words of inheritance, such as, "and her heirs," are here used. This language would, at common law, only have given a life estate in the land. But section 13 of the Conveyance Act provides, that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." Therefore the clause directing, that lot three "shall be and become the property of my daughter," standing alone, and without being qualified in any way by the language following it, vests in the daughter a fee transmissible to her heirs, notwithstanding the omission of the word, "heirs." (*Baker* v. *Scott*, 62 Ill. 86; *Walker* v. *Pritchard*, 121 id. 221; *Wolfer* v. *Hemmer*, 144 id. 554). Is a less estate limited by the words that follow, and, if so, what estate? Those words are: "and should the said Sarah Jane Spears die leaving no heirs, I will and direct that all of the above described property shall be equally divided between my sisters."

In view of the construction thus placed upon the first clause as being a clause which, standing alone, vests a fee in the devisee, it is manifest that this is a case where the fee in the first instance is conveyed to the first taker, but an effort is made to transfer this fee, upon the happening of a specified contingency, from the first taker to others by way of executory devise. In other words, an attempt is made to mount a fee upon a fee; and this can only be done by executory devise. "An executory devise is a limitation by will of a future contingent interest in lands, contrary to the rules of limitation of contingent estates in conveyances at law." (4 Kent's Com. marg. page 264). It is one of the rules governing contingent remainders, that an estate cannot be limited over to another after a fee already granted. A remainder implies

something left, and there can be nothing left after the whole has once been disposed of. It is for this reason, that a fee already granted cannot be defeated and transferred to another by way of remainder. Hence, the devise over, "should the said Sarah Jane Spears die leaving no heirs," can only be sustained, if at all, as an executory devise, and not as a contingent remainder.

To prevent perpetuities in executory devises, it is an established rule that, in case of such a devise, the contingency, upon which the intended limitation is to take effect, shall not be postponed longer than a life or lives in being and twenty-one years and a fraction of another year thereafter. If the contingency is not fixed within that period, the executory devise is bad, and the limitation is void for remoteness, but if it is so fixed, the devise is good and the limitation is valid. In the present case, the determination of the question, whether the contingency upon which the limitation is to take effect is too remote and, by consequence, whether the limitation itself is void or not, depends upon the construction to be given to the words: "and should the said Sarah Jane Spears die leaving no heirs." The limitation to the sisters of the testatrix is dependent upon the event, that the daughter should die "leaving no heirs." Do these words import a definite or an indefinite failure of issue?

A definite failure of issue is, when a precise time is fixed by the will for the failure of issue, as in the case of a devise to A, but if he dies without issue living at the time of his death, then to another. An indefinite failure of issue means a failure of issue whenever it may happen, without fixing any time, or a certain and definite period within which it must happen. (4 Kent's Com. marg. page 274; 1 Bouvier's Law Dic. page 642). An executory devise which is to take effect upon an indefinite failure of issue is void for remoteness. (4 Kent's Com. marg. page 274).

The words "dying without issue," or "die without issue," when standing alone, are held by the great weight of authority in England and in this country to denote an indefinite failure of issue, and a limitation upon such terms unqualified is regarded as void for remoteness. (2 Wash. on Real Prop. marg. pages 360, 361). But the courts often avail themselves of slight circumstances to give to executory devises a construction which regards the failure of issue as relating to a definite period of time, and not an indefinite failure. (2 Wash. on R. P. marg. page 362). "Slight circumstances are laid hold of as sufficient to indicate an intention that a limitation over on death without issue shall take effect at a definite time: towit, on the death of the first taker." (2 Redfield on Wills—3 ed.—marg. 277, note 51; *Bedford's Appeal*, 40 Pa. St. 18).

The words die "without leaving issue surviving," or "leaving no issue or child," or "if he should leave no children," have been held to create a definite failure of issue. (*Nicholson* v. *Bettle*, 57 Pa. St. 386; *Hill* v. *Hill*, 74 id. 173; *Clapp* v. *Fogleman*, 1 Dev. & B. Eq. (N. C.) 466; *Wight* v. *Barry*, 7 Cush. 105; *Van Dyke* v. *Vanderpool*, 1 McCart. (N. J.) 198; *Fairchild* v. *Crane*, 2 Beas. (N. J.) 105; *Hull* v. *Eddy*, 14 N. J. L. 169; *Eaton* v. *Straw*, 18 N. H. 320; *Hall* v. *Chaffee*, 14 id. 215; *Goodell* v. *Hibbard*, 32 Mich. 47; *Griswold* v. *Greer*, 18 Ga. 550; *Flynn* v. *Davis*, 18 Ala. 132; *Harris* v. *Smith*, 16 Ga. 545).

In the case at bar, the words are "die leaving no heirs." The word "heirs" may sometimes be construed to mean "children" or "issue," according to the context. (*Loveday* v. *Hopkins*, 1 Ambl. Ch. Rep. 273; *Harris* v. *Smith, supra; Goodell* v. *Hibbard, supra; Griswold* v. *Hicks*, 132 Ill. 494; *Summers* v. *Smith*, 127 id. 645). In the will now under consideration the word evidently means "children," because, if the intention was to include heirs generally, the sisters of the testatrix, who were to take upon the happening of the contingency, being the aunts of the daughter, might

be included among her heirs. It could hardly have been the intention of the testatrix, that her sisters should take in the event of her daughter dying without leaving those same sisters as her heirs. But, while the word, "heirs," is here evidently intended to mean "children," it unquestionably refers to children as the heirs of the devisee. The word "heirs" is ordinarily used in wills to designate those persons who answer this description at the death of the testator. The word, "heir," in its strict and technical import applies to the person or persons appointed to succeed to the estate in case of intestacy. (*Kellett* v. *Shepard*, 139 Ill. 433). Those, who succeed to the estate, are those who are understood to be living at the time of the intestate's death. If this view be correct, the words, "should the said Sarah Jane Spears die leaving no heirs," mean, "should the said Sarah Jane Spears die leaving no children at the time of her death."

This construction receives support from the fact, that the persons who are to take in the event of the death of the daughter leaving no heirs, were in existence at the time of the making of the will and are mentioned by name. The mention of the sisters as being then alive, and the designation of two of them to take the care and charge of the daughter, are facts which do not consist with the idea, that those sisters were to take the estate if, at any time in the future no matter how remote, the heirs of Sarah Jane Spears should become extinct. (*Parish's Heirs* v. *Ferris*, 6 Ohio St. 563 ; *Niles* v. *Gray*, 12 id. 320 ; *Armstrong* v. *Armstrong*, 14 B. Mon. 333 ; *Daniel* v. *Thompson*, 14 id. 663 ; *Bullock* v. *Seymour*, 33 Conn. 289 ; *Hudson* v. *Wadsworth*, 8 id. 348).

In the recent case of *Summers* v. *Smith*, 127 Ill. 645, the language of the will was : "It is further my will, in case any of my sons, etc.,   *   *   *   should die without heirs of his body, the real estate I have bequeathed to him shall go to his surviving brothers or brother ;" it was held that, where the devise over is to the survivor or survivors of

a class to which the first devisee belonged, it means a devise to a person in being at the death of the first devisee, and so relieves the devise over of objection on account of remoteness; and it was there said: "In the absence of anything appearing to the contrary, language must be presumed to have been intended to have the legal effect which the law assigns to it. So, therefore, here, 'dying without heirs of body' could only mean dying without leaving such heirs of body as the estate would have vested in, in fee, instantly, upon the death of the first devisee—as children, etc."

The rule, as announced by the English cases, is that a devise in fee, with a remainder over if the devisee dies without issue or heirs of the body is a fee cut down to an estate tail; and the limitation over is void, by way of executory devise, as being too remote, and founded on an indefinite failure of issue. (4 Kent's Com. marg. page 276). But section 6 of the Illinois Conveyance Act provides, that, "in cases where, by the common law, any person or persons might hereafter become seized, in fee tail, of any lands, tenements or hereditaments, by virtue of any devise, gift, grant, or other conveyance, hereafter to be made, or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be and become seized thereof for his or her natural life only, and the remainder shall pass in fee simple absolute to the person or persons to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass, according to the course of the common law, by virtue of such devise, gift, grant or conveyance." (1 Starr & Cur. Ann. Stat. page 571). Hence, the same reasons for holding, that the words, "die leaving no heirs," refer to issue indefinitely or a failure of issue at any time, rather than to a failure of issue at the death, do not exist in this State where we have no estates tail, as exist where, as at common law, estates tail are recognized. (*Summers* v. *Smith, supra*).

In *Voris* v. *Sloan*, 68 Ill. 588, the words, "in case she should die without issue," occurring in a deed of trust, were construed to mean "without having had issue." So that, upon the birth of a child or children of the body, the contingency was fulfilled, and the fee vested in them, and the limitation over was defeated. But the plain and obvious meaning of the expression, "should the said Sarah Jane Spears die leaving no heirs" or children, is that she should die leaving no heirs or children at the time of her death. This construction accords with the grammatical relation of the words in the phrase, and with the common understanding of their import. (*Williams* v. *Lewis*, 100 N. C. 142; *Hall* v. *Chaffee*, 14 N. H. 215).

The necessary result of the construction, by which the words in question are held to import a definite and not an indefinite failure of issue, is that the devise to Sarah Jane Spears must be regarded as the devise of a fee determinable upon her dying without leaving children at the time of her death. (*Summers* v. *Smith, supra*). It cannot be known until the death of Mrs. Dustan, whether the contingency will happen by which the limitation over is to take effect. If she dies leaving no children at the time of her death, her mother's sisters will take the property, but if she leaves a child or children at that time, such child or children will take the property as her heirs. It follows, that appellant did not have such a fee simple title as was called for by the contract, and the decree of the court below was right.

It is most strenuously contended by counsel for appellant, that the words "die leaving no heirs" refer to the death of the devisee in the life time of the testatrix, and that, as she survived the testatrix, the fee simple vested in her. Several cases in New York and Pennsylvania are referred to which seem to sustain this view. But they are not applicable here for the reasons involved in the observations already made. "When the death of the first taker is coupled with other circumstances which may

or may not ever take place, as for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator." (*Britton* v. *Thornton,* 112 U. S. 526; *Buchanan* v. *Buchanan,* 99 N. C. 308; *Summers* v. *Smith, supra;* 11 Am. & Eng. Enc. of Law, page 919).

The language of the provisions in the will sustains the view, that the death of the devisee in the life time of the testatrix was not intended. The testatrix wills and directs that 40 acres of land be sold, "and after discharging the above expenses, the balance shall become and be the property of my daughter." The "above expenses" included funeral expenses, which of course could not be incurred until after the death of the testatrix. The last clause directs that "all of the above described property shall be equally divided between my sisters," should the daughter die leaving no heirs. "All of the above described property" includes the balance of the proceeds of the sale of the 40 acres after paying funeral and other expenses, which balance could not exist until after the death of the testatrix; and as the distribution to the sisters could not take place until after the death of the daughter, the death of the daughter must have been contemplated as occurring after that of the testatrix.

We think, however, that the court below should have dismissed the bill without prejudice, so as to leave appellant to his remedy at law. The decree of the Circuit Court will accordingly be reversed, and the cause is remanded to that Court with directions to dismiss the bill without prejudice.

*Reversed and remanded.*