## ELDRED *v.* SHAW.

1. WILLS—CONSTRUCTION—ESTATES IN LAND.
    A will devising certain real and personal estate in trust for the testator's grandson, with directions to the trustee to manage, direct, and control such land until the grandson should arrive at the age of 21 years, and to appropriate no more of the income from the trust estate for the support and maintenance of such grandson than should be made necessary by accident or misfortune (the grandson having a father living), and providing that, in case of the death of the grandson without heirs by his body begotten, such land and property, with all its increase or accretions, should go to the testator's children, their heirs and assigns, does not limit the contingency of death without issue to the minority of the grandson, but creates a life estate only in him upon attaining his majority, with remainder in fee to his issue, if any, and, if not, to the testator's children and their heirs. 2 How. Stat. §§ 5519, 5520.

2. SAME—ACCUMULATION OF RENTS AND PROFITS.
    Under such will, the income from accretions during the minority of the grandson is payable to him during his life, and, upon his death, the principal passes to the same persons as the real estate.

Appeal from Oakland; Smith, J.   Submitted January 12, 1897.   Decided March 29, 1897.

Bill by Ratie Eldred against Henry A. Shaw and others to construe a will.   From a decree for complainant, defendants appeal.   Reversed.

Marvil Shaw executed his last will and testament May 5, 1875.   He died September 17, 1876.   At the time of the execution of the will, complainant, his grandson by testator's daughter, was about a year old.   His mother was dead.   Mr. Shaw was possessed of a large estate.   He left as his legatees three sons, two daughters, and his grandson, the complainant.   He divided his estate, consisting mostly of land, among his children, devising to each specific parcels, and to each attached his estimate of its value.   The seventh clause—the one over which this controversy arose—is as follows:

"I give, devise, and bequeath to my son Lysander Shaw, in trust for my grandson, Rata Eldred (so called), the son of my deceased daughter, Rachel Eldred, the undivided half of those lands above described, situate in the township of Oxford, and known as the northeast quarter, the northeast quarter of the southeast quarter, the east half of the northwest quarter, the west half of the northwest quarter, and the southeast fractional quarter of the southeast quarter, all in section 16, in township 5 north, of range 10 east, containing 438 acres, which I estimate, apportion, and appraise at the sum of $11,000, including in the above sum so appraised the undivided half of 400 sheep now on the said farm; which said son, Lysander Shaw, I direct to manage, direct, and control the said undivided half of said lands and tenements, as the trustee of the said son of my said daughter Rachel, up to the time the said grandson arrives to the age of 21 years, and that the said son, Lysander, shall use and appropriate no more of the use or income from the said trust estate for the support, education, and maintenance of the said grandson than is made necessary by accident or misfortune, and such use and appropriation is to be entirely under the judgment and discretion of my said son, Lysander; and, in the case of the death of my said grandson without

heirs by his body begotten, the lands and property above described, with all its increase or accretions, I give, devise, and bequeath to my said sons, Lysander, Henry, and William, and my said daughters, Matilda and Sally, share and share alike, and to their heirs and assigns forever."

The will was duly admitted to probate. Lysander accepted the trust, and executed it until his death, in 1887. Upon his death, complainant, by his next friend, filed a bill of complaint in the circuit court for the county of Oakland, in chancery, setting forth the will, the death of Lysander, and praying for the appointment of a guardian or trustee to succeed to and carry out the trust created by this seventh clause. The bill also set forth that the meaning of this clause was uncertain and vague, that doubt exists as to the legal effect of the same, and prayed the court to determine what estate is created thereby, in both realty and personalty, the time the estate will come into complainant's possession, and when the contingency named therein will happen, to defeat his estate and vest the remainder in the children of Marvil Shaw. The court entered a decree February 12, 1889, decreeing a trust, appointing a trustee to execute it, and deferring the meaning and construction of the will until the death or majority of complainant should occur. Complainant attained his majority March 7, 1895, and thereupon presented this petition, asking that the suit be revived and the will construed. Upon the hearing the court entered a decree determining the true intent and meaning of this clause to be to limit the contingency of death without issue by his body begotten of the complainant to the duration and period of the trust, to wit, his minority, and to vest the fee of said lands, together with the accumulations, accretions, rents, issues, and profits thereof, in the complainant, Ratie Eldred, at his majority. The petition also prayed for an accounting by the trustee. This has been duly rendered, and is satisfactory to all the parties. It shows a considerable amount of personalty in the hands of the trustee.

*Dwight N. Lowell,* for complainant.

*Geer & Williams,* for defendants.

GRANT, J. (*after stating the facts*).    1. The contention of the complainant is that the contingency of issue related solely and exclusively to the event of death before he attained the age of 21 years; that if he died before that age, leaving issue, the issue would take; and that the title became absolute and vested, relieved of any trust or remainder in favor of the defendants, the moment he attained his majority.

The contention of the defendants is that the will disposed of the real estate as follows:

(1) In trust for complainant in the event of accident or misfortune during minority, at the discretion of the trustee, and that the trust then ceased.

(2) A fee simple in complainant, giving him the use of the property, his title defeasible in the event of his death without issue then living.

(3) A fee simple absolute to the issue of his body, if there were such living at the time of his death.

(4) Upon the failure of issue living at the time of his death, a fee simple in the legatees named in the will as remainder-men.

The rule of construction obtaining in this class of cases is well stated by counsel for complainant as follows:    "It is the duty of the court to find, and authoritatively to state, the intent of Marvil Shaw; for his intent, when found, is the cardinal point, if lawful, to which all others must direct." *Barnes* v. *Marshall,* 102 Mich. 255. This, intent must be gathered, if possible, from the four corners of the instrument.    We think it clear that his intent was to convey an estate to his grandson for his use and benefit during his life, with the fee to the issue of his body, if such were living at his death, and, if not, then to his sons and daughters and their heirs and assigns.    The devise to Lysander and the others did not depend upon the death of complainant under the age of 21 without issue.    No such limitation can be placed upon the language of the will.    It

is explicit that, upon the death of his grandson without issue, the property should go to them. He appointed a trustee to take and hold the property in trust for the benefit of his grandson until he should arrive at majority. He recognized the duty of the father to provide for his maintenance and education, and therefore limited the application of the income during his minority to certain conditions. What, then, was the estate conveyed? Upon the answer to this question depend the interests of the parties. Complainant's counsel seeks to bring the case within section 5532, 2 How. Stat., which is as follows:

"A contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited shall die under the age of twenty-one years, or upon any other contingency by which the estate of such persons may be determined before they attain their full age."

The difficulty with this position is that complainant's estate was not a *prior remainder* in fee. There is no precedent estate upon which to base the prior remainder. The estate conveyed to the grandson was a present, not a future, estate. The will took effect upon the death of the testator, and must be construed as would a deed containing the same provisions. Upon the death of the testator, the grandson, through his trustee, immediately entered into possession of the estate conveyed, which was an estate *tail* of the simplest kind at the common law. It is therefore governed by sections 5519, 5520, 2 How. Stat., which read as follows:

"All estates tail are abolished, and every estate which would be adjudged a fee tail according to the laws of the territory of Michigan as it existed before the second day of March, one thousand eight hundred and twenty-one, shall, for all purposes, be adjudged a fee simple, and, if no valid remainder be limited thereon, shall be a fee simple absolute.

"When a remainder in fee shall be limited upon any estate which would be adjudged a fee tail according to

112 MICH.—16.

the law of the territory of Michigan as it existed previous to the time mentioned in the preceding section, such remainder shall be valid as a contingent limitation upon a fee, and shall vest in possession on the death of the first taker without issue living at the time of such death."

Similar devises have been construed by this court, and have been held to create estates tail, and the remainder limited thereon valid. *Goodell* v. *Hibbard*, 32 Mich. 47; *Mullreed* v. *Clark*, 110 Mich. 229. Complainant, upon attaining his majority, was therefore entitled to enter upon and enjoy the estate during his life. If upon his death he shall leave issue of his body, the fee goes to such issue; if not, it goes to the other devisees named. See, also, *Anderson* v. *Jackson*, 16 Johns. 382 (8 Am. Dec. 330).

2. What interest has complainant in the increase and accretions of the estate? The will limited the accumulation of the rents and profits of the real estate to complainant's minority, when it ceased. This was valid, under 2 How. Stat. § 5553. The accretions came from a mixed fund of land and personalty. The accumulation of such a fund was held valid in this court in *Toms* v. *Williams*, 41 Mich. 552. It was clearly intended by the testator that these accretions should constitute a fund of which his grandson should receive the income, and that the principal, at complainant's death, should go in the same direction as the real estate. It follows that this fund must be invested under the order of the court, and the income paid to the complainant.

The decree of the court below is reversed, and decree entered in accordance with this opinion, and the case remanded for further proceedings. Defendants will re- . cover costs.

The other Justices concurred.