(No. 13610.—Reversed in part and remanded.)
WILLIAM R. LEE et al. Appellants, vs. J. D. ROBERSON
et al. Appellees.

*Opinion filed April 21, 1921.*

1. WILLS—*when a devise over takes effect after death of first taker either before or after death of testator.*  Where there is a devise *simpliciter* to one person and in case of his death to another the testator will be presumed to intend a death preceding his own, but where it appears that the testator intended the first taker to take possession at the testator's death without any preceding life estate, a devise over upon the death of the first taker without children will take effect upon the death of the first taker without children either before or after the death of the testator, unless controlled by other provisions of the will.

· 2. SAME—*when word "heirs" must be construed to mean "descendants."*  Where a testator gives land to his son and provides that if the son shall die without "heirs" the estate shall be equally divided among the testator's "living heirs," the word "heirs" in both instances must be construed to mean "descendants" where such is the testator's apparent intention, and the expression "living heirs" will be construed to mean the testator's descendants who survive the son, where there is no intention appearing in the will to include the son.

3. SAME—*meaning of the word "heirs."*  The word "heirs" in its strict and technical sense applies to the person or persons appointed by law to succeed to the estate in case of intestacy, but the word may be construed to mean "children" or "issue" or "descendants," according to the context.

4. DEEDS—*grantees of base or determinable fee take only estate of the grantor.*  The determinable quality of a determinable or base fee follows any transfer of it, and a conveyance by a devisee who has been given an estate subject to a gift over upon his death without descendants passes only the base or determinable fee, which terminates when the grantor dies without ever having had children born to him.

5. APPEALS AND ERRORS—*when decree may be reversed as to one defendant.*  Where a decree is jointly binding on several defendants, so that each is liable for the whole or is jointly liable, a reversal on the appeal of one defendant vacates the decree as to all the defendants, but when the decree is joint in form but several in effect it may be reversed as to part of the defendants, only.

APPEAL from the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding.

PRETTYMAN, VELDE & PRETTYMAN, and JESSE BLACK, JR., for appellants.

J. M. POWERS, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Ephraim Roberson, of Tazewell county, executed his last will and testament March 26, 1856, and died testate April 4, 1856, leaving him surviving Jane Roberson, his second wife, and William Roberson and Eliza Ann Mitchell, two children of his first marriage, and three minor children by his second wife,—Nathaniel Roberson, seventeen years of age, Margaret Roberson, (now Margaret Cook,) and Clarissa Roberson, (now Clarissa Bateman,) aged fifteen and seven years, respectively,—as his only heirs-at-law. At the time of his death his children by his first wife were married and living separate and apart from their father. The widow and the minor children resided at the homestead of the testator and constituted the family mentioned in his will. His two minor daughters were married after his death and were his only children living at the time this suit was instituted. Nathaniel Roberson enlisted in the civil war and served four years. His mother married Francis Rowe during this period. Nathaniel married after his two minor sisters and his mother were married and died August 14, 1912, leaving Margaret Roberson, his widow, surviving him, and without ever having had born to him any child. The testator died seized of the 283 acres of land in controversy in this suit, except the 40 acres on which he held a note and mortgage, which was afterwards foreclosed and the title thereto acquired as contemplated by the will. Upon the death of the testator and the probate of his will Nathaniel Roberson entered into possession of all of said

lands as devisee of the testator, and with his mother and the other two minors constituted the family until after the marriage of the two minor daughters, and then continued in possession thereof after the marriage of his mother until he sold the same as hereinafter set forth. The material clauses of the will are the following:

"*Second*—After the payment of such funeral expenses and debts, I give, devise and bequeath unto my two youngest daughters, Margaret Catherine Roberson and Clarissa Jane Roberson, $1000 in money, to be kept on interest and the interest appropriated to their use for raising and schooling them until they become of the age of eighteen.

"*Third*—It is my will that the farm now occupied by Clemson Lee, situate in said county of Tazewell and known and described as follows, to-wit, the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter and the southeast quarter of the southeast quarter, all in section No. 34, in township No. 25, north of range 2, west of the third principal meridian, containing 120 acres, be the same more or less, in said county and State aforesaid, be sold, one-half to be paid cash in hand or by the first of January next, and the balance to be paid in three equal payments, in one, two and three years, with six per cent interest per annum from date of sale, to be sold at private sale.

"*Fourth*—When said money is received on sale of said farm aforesaid, I give and devise unto my son William Roberson $500 of the first that is received on sale of farm aforesaid.

"*Fifth*—I also give and bequeath unto James Mitchell $500 in money of the first that is received on the sale of said farm aforesaid.

"*Sixth*—I give and devise unto my son Nathaniel Roberson the farm on which we now reside, subject to the dower of my wife, containing 153 acres; also the Cornelius Wilson farm, situated in said county, known and described as

follows, to-wit, the southwest quarter of the southeast quar-
ter and part of the northwest quarter of the southeast quar-
ter of section No. 23, in township No. 25, north, range 2,
west of the third principal meridian; also the northwest
quarter of the northeast quarter of section No. 4 of town-
ship No. 24, north of range No. 2, west of the third prin-
cipal meridian, which is also subject to the dower of my
wife; also a 40-acre lot which I sold to Cornelius Wilson,
which I hold a mortgage on for the payment of the same,
provided it falls back to me; and the south half of the
northeast fourth of the southwest quarter of section No. 26,
in township 25, north, range 2, west of the third principal
meridian, subject to dower as aforesaid, and that he shall
stay at home with the family, tend the farm and assist his
mother to take care and raise the family.

"*Seventh*—It is my will that the north half of the
northeast fourth of the southeast quarter of section No. 26,
in town and range last described, be sold at private sale.

"*Eighth*—If my son Nathaniel should die without heirs,
the estate which I have willed to him as above stated it
is my will shall be equally divided with my living heirs.

"*And lastly,* I hereby constitute and appoint Joseph
Dressler executor of this my last will and testament, re-
voking and annulling all former wills by me made and rati-
fying and confirming this and no other to be my last will
and testament."

The testator's widow filed on June 16, 1857, her relin-
quishment, renouncing in writing all her claims under the
will and electing to take in lieu thereof her statutory rights
in her husband's estate. She died in the winter of 1877.
Nathaniel Roberson and his wife in 1867, 1877 and 1879
conveyed by warranty deeds the entire 283 acres of land
devised to him by the testator, including the 40 acres on
which foreclosure proceedings were had and the title there-
by vested in him under the terms of the will. By further
conveyances by the grantees of the grantors the title to the

283 acres of land devised by the testator passed to the following persons in the following portions, to-wit: To Margaret Cook 60 acres; to William R. Lee 133 acres; to William Cook 74.55 acres; to Benjamin Gossmeyer .50 acres, and to Mary Tyrrell 14.81 acres. These five parties were all in possession of their respective portions of the 283 acres when this suit was begun except Mary Tyrrell, who died seized of her 14.81-acre tract, and her title and possession to this tract passed by descent and by conveyances to her children, George Tyrrell, Maria Tyrrell, John Tyrrell, William Tyrrell, Thomas Tyrrell, Henry Tyrrell, Katie Tyrrell, Fannie Tyrrell, Bertha Krenning and Mary. Timmer. All the grantees of the 283 acres, and their grantors, since the conveyances by Nathaniel Roberson, have been in possession thereof under claim of ownership, paid full value therefor and all taxes on the same, and their right or title was never questioned previous to the death of Nathaniel. Henry Denhart was a mortgagee and trustee by virtue of certain notes and mortgages executed by William R. Lee on the 133-acre tract deeded to and claimed by the latter, which notes and mortgages aggregated about $20,000 and are unpaid.

The personal property and good notes and chattels of the testator at the time of his death amounted to about $3500. The widow's award was fixed at $561.50. The executor named in the will qualified. The lands described in the will, other than the 283 acres in question and devised to Nathaniel Roberson, were sold, and it appears that the proceeds thereof and of the personal property after the payment of the debts, and the widow's award and the specific legacies mentioned in the will, were distributed among the heirs as intestate property.

On January 13, 1916, Clarissa Bateman, the youngest daughter of the testator, all of the living children, and the grandchildren and descendants of William Roberson and Eliza Ann Mitchell, (the two oldest children of the testa-

tor and who are now deceased,) filed their bill for partition of the 283 acres of land and for the construction of the will of the testator, and particularly of the sixth and eighth clauses thereof, relating to the devise of land to Nathaniel Roberson, and for a declaration as to the true meaning and intent thereof and the relative rights thereto of the parties to the bill. The bill alleged the material facts heretofore recited, and made as parties defendant Margaret Cook, the other living daughter of the testator, William R. Lee, Benjamin and Charles Gossmeyer, William Cook, (a son of Margaret Cook,) all the children aforesaid of Mary Tyrrell, deceased, Henry Denhart, as trustee and individually, George H. Hoffman, Christian Zehr and Lyman Porter, trustee. The bill was afterwards dismissed as to Hoffman, Zehr and Porter. All the remaining defendants except Margaret Cook, Benjamin Gossmeyer, Charles Gossmeyer and Mary Timmer, which latter four made default, filed answers to the bill. Their answers were later amended, with the further allegation that during the pendency of the suit Margaret Cook, mother of William Cook, conveyed to him all her interest in the 74.55 acres of which he was in possession, to which amended answers general replications were filed. On a reference to the master in chancery evidence was taken by him and reported to the court without conclusions of law or of fact. The court found for the complainants, and decreed that by virtue of clauses 6 and 8 of the will Nathaniel Roberson became vested, seized and possessed of a base or determinable fee in the premises, which was to become absolute upon his death leaving children him surviving, and that upon the death of Nathaniel without surviving children all of the property devised to him vested in fee simple absolute in the living children of the testator who survived him at his death, in equal portions, or in case of their decease since that time then to their heirs-at-law *per stirpes,* except Nathaniel, who was equitably estopped from claiming any share therein by virtue

of his warranty deeds aforesaid. The court further de-
creed partition as prayed in the bill, decreeing that Clarissa
Bateman and Margaret Cook, the two living children of
the testator, were each entitled to an undivided one-fourth
in fee of the 283 acres, and that the children, grandchildren
and descendants of the other deceased children of the tes-
tator, William Roberson and Eliza Ann Mitchell, were en-
titled to the other undivided part *per stirpes,* and found the
interest that each particular one of the descendants was
entitled to. The court further decreed that the complain-
ants and the defendant Margaret Cook were entitled to an
accounting for rents and profits of the respective tracts of
land held by the remote grantees of Nathaniel Roberson up
to the time of the decree or during the time the respective
occupants of said tracts had held the same since the date
of Nathaniel's death. Among the defendants having to
make accounting and pay rents were Margaret Cook and
William Cook, her son. The defendants Henry Denhart,
individually and as trustee, William R. Lee, Thomas Tyr-
rell and William Cook prayed and perfected their several
appeals to this court.

There is no contest on the facts in this case, most all
of which were agreed upon by the parties. All the facts
material to the issues are stated in this opinion when we in-
clude the further statement that the conveyance by Marga-
ret Cook to William Cook of the 74.55-acre tract of which
he was possessed was made during the pendency of the suit
and before default was entered against her. There can
certainly be no question that by that conveyance William
Cook acquired whatever interest his mother then owned in
that tract. Whatever interest his mother then owned in
that tract had accrued to her after the death of her brother
Nathaniel and by virtue of the testator's will. The will
provided in the sixth and eighth clauses thereof that the
283 acres should go to Nathaniel, subject to the dower
right of his mother, Jane Roberson, and if he should die

without heirs the land was to be equally divided among the testator's "living heirs."

The first contention of the appellants is that the testator referred to the death of Nathaniel in the lifetime of the testator or at any time before the death of the widow of the testator, to whom counsel refer in this connection as the life tenant. They insist, therefore, that this court should declare that the fee simple title to the 283 acres was vested in Nathaniel at the death of his mother, and that the limitation over to the "living heirs" of the testator was defeated because he did not die "without heirs" within the time specified in the will. The rule in this country and in England is that where there is a devise *simpliciter* to one person and in case of his death to another, there being no contingent or doubtful circumstances connected· with such death, the testator will be presumed to intend a death preceding his own. · This rule is conceded by appellees, and it is unnecessary to further discuss that proposition or to even refer to the authorities therefor. But where, as in this case, the devise over is to take. effect in case of the death of the first taker under circumstances which may or may not happen, unless controlled by other provisions of the will, it will take effect upon the death of the first taker, under the circumstances specified, either before or after the death of the testator. In this case the testator by his will intended to vest the 283 acres of land in Nathaniel in possession, subject to the dower of his mother. The will directs that he shall remain at home with the· family, consisting of his mother, himself and his two minor sisters, and that he. tend the farm and assist his mother to take care of and raise the minors. This provision clearly shows that the testator contemplated that his son Nathaniel would survive him. The oral testimony confirms the fact, and shows that the testator was suffering from a severe attack of typhoid fever at the time he made his will and that he died of· that disease within nine days thereafter. As the

testator intended to vest the title of the lands in his son Nathaniel, and in effect directed him to take possession thereof at once after the testator's death, this case is to be treated as in that class of cases where the will creates no particular life estate, which is to expire before the vesting of the possession of the land in Nathaniel, and therefore there is no ground for the contention of the appellants that as the death of Nathaniel did not take place within the lifetime of his mother the absolute fee simple title to the land is to be held to be vested in him. In this class of cases, where the title of the first taker is not preceded or supported by a life estate and where there is a doubtful or contingent circumstance connected with the death of the first taker, upon the happening of which the devise over is to take effect, the well established rule of law in this State and in England is that the devise over will take effect upon the death of the first taker, under the circumstances specified, either before or after the death of the testator, unless controlled by other provisions of the will. *Smith* v. *Kimbell,* 153 Ill. 368; *Fifer* v. *Allen,* 228 id. 507; *Bradsby* v. *Wallace,* 202 id. 239; *Ahlfield* v. *Curtis,* 229 id. 139; *Crocker* v. *VanVlissingen,* 230 id. 225; *O'Mahoney* v. *Burdett,* L. R. 7 Eng. & Ir. App. Cas. 388; Kales on Estates and Future Interests, (2d ed.) secs. 532, 533; Hoopes on Executory Interests, 156.

The eighth clause of the will provides that if Nathaniel should die without heirs the estate willed him shall be equally divided among the testator's "living heirs." Ordinarily the words "heirs" and "heirs-at-law" are used to designate those persons who answer this description at the death of the testator. The word "heir," in its strict and technical sense, applies to the person or persons appointed by law to succeed to the estate in case of intestacy. (*Kellett* v. *Shepard,* 139 Ill. 433.) The word "heirs" may sometimes be construed to mean "children," or "issue," or descendants, according to the context. (*Summers* v. *Smith,*

*127* Ill. 645; *Black* v. *Jones,* 264 id. 548; *Smith* v. *Kim-bell, supra; Wilson* v. *Wilson,* 261 Ill. 174.) ' In the eighth clause of the will the word "heirs" is not used in its technical sense, because it would not be possible for Nathaniel to die without heirs if · the testator died leaving "living heirs," as his heirs might also be heirs of Nathaniel. We are also of the opinion, and so hold, that the words "heirs," and "living heirs," as used in said clause, mean descendants, and living descendants. We think that it is clear from the context of the will that the testator did not intend to include his son Nathaniel within the designation "my living heirs," and that the designation "living heirs" means descendants living at the death of Nathaniel. To hold that the word "heirs" in both instances means children rather than descendants would argue for the further holding that the living children of the testator or the children surviving Nathaniel would take the devise over to the exclusion of the descendants of the other two deceased children of the testator, and there is no indication anywhere in the will of such an intention.

Under our interpretation as aforesaid, by the sixth and eighth clauses of the testator's will Nathaniel took a base or determinable fee, which would have endured for all time if he had died leaving descendants; but the condition on which the estate was to become a fee simple absolute never happened, and the title to the land devised under the executory devise passed to the two daughters of the testator, Margaret Cook and Clarissa Jane Bateman, and to the other descendants of the testator living at the death of Nathaniel, and that such descendants take *per stirpes* on the death of Nathaniel. The determinable quality of a determinable or base fee follows any transfer of it, and the conveyances of Nathaniel by his deeds of the 283 acres of land aforesaid only passed the same character of title to his grantees,—a base or determinable fee, which terminated at his death without descendants.

It is insisted by appellants that the rule of law stated in *Smith* v. *Kimbell, supra,* and the other cases holding to the same effect, and which rule we have applied in this case, was not the law of this State in 1856, when Ephraim Roberson died. They then invoke the rule that the law existing at the time of his death should be applied in the interpretation of his will. Those cases were decided since the testator's death, but they state the law of this State as it has existed since the time it was admitted as a State. The *Smith case, supra,* stated the law as applied to a testator's will executed in 1854, and that testator died in the same year. It was properly applied to the interpretation of that will and is equally applicable to the interpretation of this will, even if it were true that the rule was never announced until long after both testators died. The same rule is also sustained by many courts of this country.

Under our interpretation of this will and holding, Margaret Cook at and after Nathaniel's death was the owner of an undivided fourth of the land in question, including the tract of land that she conveyed to her son, William Cook. The latter became and is now the owner of an undivided one-fourth of the 74.55 acres by virtue of his mother's deed to him. This holding can only be availed of by William Cook. His mother made default in the lower court and has not appealed or assigned error on this appeal. No such question therefore arises as to her, a decree *pro confesso* having been entered against her. The question as to what descendants of the testator took the title to the lands in question by the devise over does not concern or affect any of the other appellants in this case. Where a decree is jointly binding on several defendants, so that each is liable for the whole or is jointly liable, a reversal on appeal of one defendant vacates the same as to all of the defendants, but when the decree is in form joint but several in its effect, it may be reversed as to part of the

defendants. *Pittsburg, Ft. Wayne and Chicago Railway Co.* v. *Reno,* 123 Ill. 273.

For the errors indicated, the decree of the circuit court is reversed as to the appellant William Cook and is affirmed as to all other appellants and defendants, and the cause is remanded for further proceedings in accordance with the views herein expressed.   *Reversed in part and remanded.*

---

(No. 13742.—Reversed and remanded.)
RUTH M. HOLLAN *et al.* Appellees, *vs.* LOLA E. KEPNER, Appellant.

*Opinion filed April 21, 1921.*