33   289
66   409
33   289
68   212

## BRADFORD BULLOCK AND WIFE *vs.* WILLIAM H. SEYMOUR AND WIFE.

A testator having two unmarried sons *A* and *B*, his sole heirs, devised certain real estate to *A* in trust for the benefit of *B* who was an idiot, during *B*'s life, at the expiration of which it was " to revert to said *A*, or to his heirs." The will then proceeded as follows: " The residue of my property," (subject to a dower interest,) " I give and devise to my son *A* and to his heirs forever. The above devise to my son *B* is in lieu of all other share in my estate, present or contingent, and the reversion of the dower of my wife is to belong to my son *A*. And in case my son *A* should die without children or their legal representatives, then my estate shall be divided among my legal heirs." Held, that the interest taken by *A* in certain real estate forming part of the residue of the property, was in

the first instance an estate in fee simple, defeasible upon the event of his dying without children or their legal representatives living at the time of his death, but that upon his subsequent marriage and the birth of a child this estate became at once absolute and indefeasible.

AMICABLE SUIT, upon the following agreed statement of facts.

Romanta Seymour died in 1852, leaving a widow and two unmarried sons, William H. and DeWitt C., as his sole heirs. By his last will he devised certain real estate to William in trust for the benefit of De Witt, who was an idiot, during the life of the latter, at the expiration of which it was " to revert to said Wm. H. or to his heirs." The remaining provisions of the will were as follows:—" The residue of my property, after deducting the lawful dower of my wife Julia Maria Seymour, to be set to her equitably out of my estate, I give, devise and bequeath to my son Wm. H. Seymour, and to his heirs forever. The above devise to my son DeWitt Clinton is in lieu of all or any other share in my estate, present or contingent, and the reversion of the dower of my wife, Julia Maria Seymour, is to belong to my son William H. And in case my son Wm. H. Seymour should die without children or their legal representatives, then my estate shall be divided among my legal heirs. And I hereby constitute and appoint my son Wm. H. Seymour executor of this my last will and testament."

The will was duly proved, and a certain piece of land, forming part of the residue of the testator's property, was set to the widow as her dower, and the reversion of the same distributed to William H. Seymour. The latter subsequently married, and by various conveyances his title to this land became vested in his wife. Four children were born, the issue of this marriage, all of whom were living at the commencement of this suit, as was also DeWitt C. Seymour, whose condition remained unchanged. After William H. Seymour had parted with the reversionary interest, and while this was vested in his wife, he received from the widow of Romanta Seymour a conveyance to himself of her dower interest in the

land, and shortly afterwards united with his wife in a joint conveyance of the property to Mary A. Bullock, wife of Bradford Bullock, by a warranty deed, containing the usual covenants of seizin and warranty. If in the opinion of the court the grantors were not seized of the land at the time of this conveyance as a good indefeasible estate in fee simple, it was stipulated that certain agreed damages should be awarded to the plaintiffs for the breach of covenant.

The case was reserved by the superior court for the advice of this court.

*Hyde*, for the plaintiffs.

William H. Seymour took only an estate-tail in the land in question, subject to a dower interest under the will, and this estate and nothing more was in his wife at the time of the conveyance to the plaintiffs, and, in connection with a release of the dower interest, was all that the latter received, although they had bargained for a fee-simple. 3 Greenl. Cruise, 232, *et seq.*; *Hall* v. *Priest*, 6 Gray, 18; *Burrough* v. *Foster*, 6 R. Isl., 534.

*Robinson*, contra.

The devise of the residue to William H. Seymour was absolute. The limitation is void for repugnancy. *Ide* v. *Ide* 5 Mass., 500; *Doe* v. *Frost*, 3 Barn. & Ald., 546; *Clayton* v *Lowe*, 5 id., 636; *Jackson* v. *Bull*, 10 Johns., 19; *Adams Chaplin*, 1 Hill Ch., (S. Car.,) 265; *Bowman* v. *Tucker*, Humph., 648. And as a remainder in fee, devised to one heirs by the name of heirs. *Whitney* v. *Whitney*, 14 Mass., 90. So it is void for uncertainty and absurdity. If William had died childless, and this clause were operative, the estate would go to De Witt, as the sole remaining "legal heir," although he had been expressly excluded from receiving any other share in the estate, present or contingent, than the trust gift.

If the devise is not of an indefeasible fee, it is of a fee defeasible upon the happening of a certain event, and the birth of the first child determined this liability to defeasance.

*Barnfield* v. *Welton,* 2 Bos. & Pul., 324; *Weakley* v. *Rugg,* 7 T. R., 322; *Ex parte Davies,* 2 Sim. (N. S.,) 114; *Clason* v. *Clason,* 18 Wend., 369. The use of the word *heirs* in other parts of the will shows clearly that it was not used in the sense of *heirs of the body. Korn* v. *Cutler,* 26 Conn., 4.

CARPENTER, J. Romanta Seymour died in 1852, leaving a will by which, after making provision for the support of his son DeWitt Clinton Seymour, he devised to William H. Seymour, one of the defendants, the property, in question, as follows :—" The residue of my property, after deducting the lawful dower of my wife Julia Maria Seymour, to be set to her equitably out of my estate, I give, devise and bequeath to my son Wm. H. Seymour, and to his heirs forever. The above devise to my son DeWitt Clinton is in lieu of all or any other share in my estate, present or contingent, and the reversion of the dower of my wife, Julia Maria Seymour, is to belong to my son Wm. H. And ι case my son Wm. H. Seymour should die without childre. ιr their legal representatives, then my estate shall be divided among my legal heirs."

In 1864 the defendants, being the owners of the interest devised to Wm. H. and Julia M. Seymour, united in a conveyance of the property in question to Mary A. Bullock, one ϟ the plaintiffs, with covenants of seizin and warranty. At ιe date of said will DeWitt Clinton was and still is an idiot d unmarried. Wm. H. was then unmarried, but has since ιarried, and has four children now living, the issue of said marriage. Wm. H. and DeWitt Clinton are the only children and heirs at law of the said Romanta Seymour.

The plaintiffs insist that at the time of the execution of the deed to the said Mary A., the defendants were not seized of the premises as a good indefeasible estate in fee simple, but that Wm. H. Seymour under the will was a tenant in tail only, and that therefore their covenant of seizin is broken. This the defendants deny. The case must turn upon the construction to be given to the will.

What estate did Wm. H. Seymour take under the will?

Was it an estate tail, or a defeasible fee simple? We think he took the latter. It is a principle of the common law to which the English courts have always adhered with great tenacity, that a fee can not be limited after a fee. Thus where by deed land is conveyed to one in fee, with a limitation over to another upon the happening of a particular event, the limitation over is void. But in a will, for the purpose of giving effect to the intention of the testator, such a limitation is held to be good as an executory devise. Executory devises are not favored in law, and the English judges have gone great lengths to construe the estate in the first devisee to be less than a fee, so as to give effect to the limitation over as a contingent remainder. Thus where land is devised to *A* and his heirs, but in case *A* should die without issue then to *B* and his heirs, they construe the words, "die without issue," to mean an indefinite failure of issue, and not a failure at the time of the death of *A*; thereby giving *A* an estail tail by implication, and giving effect to the limitation over to *B* as a contingent remainder. And it is only where the language used clearly requires it, that they construe such words to mean a failure at the death of the first devisee; as such a construction gives the first devisee a fee, and allows the second to take only by way of an executory devise. But our own courts have been less rigid in the construction of wills of this character; and we think with good reason.

In *Morgan* v. *Morgan,* 5 Day, 517, it was held "that by the words 'die without children,' is intended a dying without children living at the death of the first devisee." To the same effect are the cases of *Couch* v. *Gorham,* 1 Conn., 36, and *Hudson* v. *Wadsworth,* 8 id., 348. We think the language used in this will requires the same construction; and that consequently William H. Seymour took an estate in fee simple, defeasible upon the event of his dying without children or their legal representatives at the time of his death.

The only remaining question is whether, at the time of the execution of said deed, the estate of Wm. H. Seymour was still defeasible, or had become absolute. The testator doubtless had in mind the possibility that his son might die without ever having had children, and provided for that contingency

by devising the property over, in that event to his legal heirs. And we think it is equally clear that he intended, in case his son should have children, that the fee should vest absolutely in him. It follows, therefore, that the contingency upon which the limitation over was to take effect, could never happen after the birth of children to Wm. H. Seymour, and that, upon that event, the estate in him became absolute and indefeasible. Who would be the legal heirs in the event of his two sons dying without children does not appear, but as they must have been distant relatives, the presumption arises that he would not entail the property to his son for their benefit; and we ought not to give such an effect to his will by construction unless such an intention is clearly manifest. This presumption is materially strengthened by the consideration that the testator manifested confidence in his son's integrity, and capacity to manage the property, by making him trustee for his unfortunate brother.

We think, therefore, this construction is in harmony with the other provisions of the will, and with all the circumstances of the case, and best effectuates the general intention of the testator.

The superior court is therefore advised to render judgment for the defendants.

In this opinion the other judges concurred.