EDWARD L. TURNER, ADMINISTRATOR, *vs.* DAVID BAL-
FOUR AND OTHERS.

New London Co., May T., 1892. ANDREWS, C. J., CARPENTER, SEY-
MOUR, TORRANCE and FENN, Js.

A testator by the 9th clause of his will gave certain real estate to his grand-
son *R.* By the 10th clause he gave half the residue of his estate to
his son *T* and his heirs, and the other half to his son *D* for life, with
the following provision—"and at *D's* death his share goes to my
grandson *R* and his heirs." The 11th clause was as follows:—"In
case my said grandson *R* dies leaving no issue, I give his share, above
indicated, to my six children." Held that, by the term "his share,"
was intended the half of the residue given by the 10th clause, and
that it did not include the real estate given to *R* by the 9th clause.

The word "share" in the 10th clause clearly having reference to *D's*
share of the residue which was to go to *R* on *D's* death, it would be
presumed that the testator used the word in the same sense in the
11th clause.

It is a general rule that where a word is used in one part of a will in a
certain sense, it is to have the same meaning given to it in other parts
of the will; unless the context shows that it must have a different one.

The 10th clause of the will taken by itself gave *R* a vested remainder in
fee. Held that the 11th clause, in which it was provided that if *R* died
without issue his share should go to the six children of the testator,
was to be read as if it made a part of the 10th clause.

Thus taken it was to be construed as meaning, by dying without issue, the
death of *R* without issue before the termination of the life estate.

*R* in fact died before the termination of the life estate. Held that his in-
terest in the remainder at once ceased, and the remainder to the
children of the testator immediately took effect and became vested.

[Argued June 1st—decided June 30th, 1892.]

SUIT for the construction of a will; brought to the Supe-
rior Court in New London County, and reserved upon the
facts as admitted for the advice of this court. The case is
fully stated in the opinion.

*D. G. Perkins,* for the children of Robert Balfour, the
testator.

*S. Lucas,* for Thomas Balfour and his children.

ANDREWS, C. J.　Thomas Balfour died on the 15th day of January, 1890, leaving a will, of which the following paragraphs only are necessary to be considered :

" *Second.* After the payment of my said debts and funeral expenses, I give and bequeath to my wife, Elizabeth R. Balfour, the use of the tenement in which she now lives, and fourteen dollars per month during her life."

" *Ninth.* I give, devise and bequeath to my grandson, Robert Balfour, the house known as the Geer house, subject to my wife's use of a tenement during her life as before mentioned, to him and his heirs forever.

" *Tenth.* After the payment of my said debts and funeral expenses and the preceding legacies and devises, I give, devise and bequeath half the rest and residue of my estate, of whatever kind and wherever situate, to my son David Balfour, to have and hold the same during his life, and at his death his share goes to my grandson Robert Balfour, to him and his heirs forever.　The other half of said rest and residue of my estate I give, devise and bequeath to my son Thomas Balfour, to him and his heirs forever.

" *Eleventh.* In case my said grandson Robert Balfour dies leaving no issue, I give, devise and bequeath his share, above indicated, to my six children, share and share alike."

By the finding of facts it appears that the testator left a widow, who has since died ; and that he had six children living at his death and who are still living, each married and having children.　Robert Balfour, the grandson named in the ninth, tenth and eleventh paragraphs of the will, was a son of Thomas Balfour.　He died about a year after the death of the testator at the age of fifteen years and ten months, never having had issue.

Upon these parts of the will two questions are propounded to the Superior Court, and reserved for the advice of this court.

" First. Does the share of Robert Balfour, conditionally disposed of in the eleventh section, include the gift to Robert contained in both the ninth and tenth sections, or only that contained in the tenth section ?　Second. Rob-

ert Balfour the grandson having died after the death of the testator leaving no issue, do the Geer house devised to him in the ninth section and the one half residue given to him in the tenth section, or does the property given to him in either section, go to the six children of the testator, as provided in the eleventh section, or does it go to the brothers and sisters of said Robert ? "

The word " share " in the tenth paragraph of the will means the undivided half of the rest and residue of the testator's estate given to the testator's son David Balfour for his life, with remainder in fee to Robert Balfour, the testator's grandson. The other undivided half of the rest and residue is given to Thomas Balfour, another son of the testator, in fee. The word " share " ordinarily means a part or a definite portion of a thing owned by a number of persons in common. It contemplates something owned in common by two or more persons and has reference to that part of the undivided interest which belongs to some one of them. The word " share " in this tenth paragraph is used strictly according to this definition. The testator had in mind the rest and residue of his estate as being owned in common by his sons David and Thomas. He then speaks of the interest in this undivided part of his property which is to belong to his son David and calls it his, David's, share. But at the death of David his share in the rest and residue becomes the share of Robert, the grandson. And in this way the share of the grandson Robert is indicated in the tenth paragraph. In the eleventh paragraph the share of the grandson Robert Balfour, " above indicated," is given over, in case he dies without issue, to the testator's six children. It is a familiar rule of construction that when a word is used in one part of a will with a certain meaning, it is to have the same meaning in other parts of the will unless the context shows that it must have a different one. We are led then to believe that when the testator used the word " share " in the eleventh paragraph of his will he intended precisely the same thing that he had indicated by that word in the tenth paragraph that is, an undivided half of the rest

and residue of his estate, and that he did not intend the share mentioned in the eleventh paragraph to include the devise to Robert in the ninth paragraph of the will. . The meaning of the word " share," the rule of construction, and the words of the will, all concur to bring us to the same conclusion.

The tenth section of the will taken by itself would clearly give to Robert Balfour a vested remainder in fee in the share of the residue there given him. It would not affect the case that he died before the determination of the preceding life estate. That is an incident that may occur in any case of a remainder after a life estate. But the eleventh clause of the will is manifestly to be read as if it was a part of the tenth, and the provision of that clause that if Robert should die without issue his share should go to the six children of the testator, must be taken to mean a dying without issue before the termination of the life estate. This was clearly the meaning of the testator, as, if he had meant a dying without issue in middle life or old age, he would hardly have given the property over to his six sons, who were a generation older then his grandson Robert. Construing this provision as having this meaning, it then becomes a condition of the gift of the remainder to Robert that he should be living at the expiration of the life estate. It makes no difference whether this remainder did not vest, or having vested was defeated by the condition as a subsequent one, since in either case Robert would have had no existing interest when the life estate terminated, as he was not then living. Upon his death the remainder to the six children of the testator immediately took effect and became a vested one. The devise does not operate at all as an executory devise, but is good at law, and is governed wholly by the settled law as to remainders, whether created by will or by grant.

The limitation of the effect of the provisions of the eleventh clause to those of the tenth, makes our conclusion fall in fully with the actual intent of the testator, which we regard as clear. If however it should be construed as applying to the gift of the Geer house in the ninth clause, a

question would arise as to whether the gift, being expressly in fee, could be reduced to a life estate by the later provision of the eleventh clause. This question we have no reason for considering.

In answer to the first question, we say that the share of Robert Balfour conditionally disposed of in the eleventh paragraph of the will includes only the gift to him contained in the tenth section.

The answer to the first question substantially answers the second. Robert having died without issue, and intestate, (he was not of an age to be capable of making a will,) his interest in the Geer house vests in his brothers and sisters.

The Superior Court is advised to render judgment in accordance with the views herein expressed.

In this opinion the other judges concurred.