GEORGE L. CHESEBRO *vs.* PETER P. PALMER ET AL.

Second Judicial District, Norwich, May Term, 1896. ANDREWS, C. J., TOR-
RANCE, FENN, BALDWIN and HAMERSLEY, JS.

Where words apt to a devise in fee simple are qualified by words following,
which dispose of the estate on the death of the devisee in such terms
as imply an interest in the heirs of his body, the estate so devised will
be held an estate in fee tail in the first taker, unless such construction
conflicts with other provisions of the will and the circumstances sur-
rounding the testator.

In ascertaining the meaning in any particular will, of language limiting
a devise in fee simple, the governing intent of the testator is an intent
expressed in the will consistent with the rules of law; and the meaning
of language used cannot be determined by an arbitrary rule of legal
definition, but depends in each case on the peculiar provisions and
characteristics of the special will, which must to a large extent be its
own interpreter, as well as on the circumstances surrounding the tes-
tator.

The plaintiff covenanted to sell and convey in fee simple certain real estate
to the defendant, but upon tendering the deed in due form at the time
agreed upon, the defendant refused to accept it, solely on the ground
that the plaintiff did not own and could not convey a title in fee sim-
ple. The plaintiff's title depended wholly upon the meaning of a
clause in his uncle's will, reading as follows: "I give and bequeath to
George Lasher Chesebro (the plaintiff), son of Gideon P. Chesebro,
after the decease of my wife, my house and buildings, also all my real
estate, viz.: all my lands, wherever situated, together with any and all
estate, right or interest in lands which I may acquire after the date of
this will, to him, his heirs and assigns forever. Yet it is my will that
if the said George Lasher Chesebro dies leaving no heirs lawfully be-
gotten, then in that case I give the above bequests to Daniel Frost
Chesebro, son of Gideon P. Chesebro, to him his heirs and assigns for-
ever. If the said Daniel Frost Chesebro dies leaving no heirs lawfully
begotten, then I give the above bequest to Gideon P. Chesebro, to
him, his heirs and assigns forever." All the devisees named in the
will survived the testator; the widow died in 1880, and subsequently
Daniel died leaving no heirs of his body; the plaintiff is without chil-
dren and has never married. In an amicable suit, to which Gideon
voluntarily became a party, it was *held* that upon an application of
the foregoing rules and in the light of the surrounding circumstances
disclosed by the record, the devise to the plaintiff was so limited that
he had not now at all events acquired a fee simple, and that the de-
fendant was not bound to accept the deed but was entitled to judgment
in his favor.

Chesebro *v.* Palmer et al.

Whether a third person can be summoned into court and made an invol-
untary party to an amicable suit therein pending, *quære.*

[Submitted on briefs May 27th—decided June 25th, 1896.]

AMICABLE SUIT for the specific performance of an agree-
ment to purchase real estate, which involved the validity and
construction of the will of Edmund D. Chesebro of Stoning-
ton, brought to the Superior Court in New London County
and reserved by that court, *Robinson, J.,* upon an agreed
statement of facts, for the consideration and advice of this
court. *Judgment advised for the defendant.*

The material facts as stated by the parties, are as follows :
On October 23d, 1894, the plaintiff and defendant executed
a sealed instrument, by which the plaintiff covenanted to
sell and convey to the defendant a fee simple in five tracts
of land situate in the town of Stonington, and to deliver to
the defendant a deed with the usual covenants of warranty
conveying said estate in the five tracts, at the office of A. B.
Crafts in Westerly, R. I., on November 17th, 1894, at 9 A. M.,
upon payment by defendant of $4,500. The defendant cov-
enanted to pay the plaintiff $4,500 at said time and place,
upon delivery of said deed. The plaintiff claims to have ful-
filled his part of the agreement, and the defendant claims
that the plaintiff does not own a fee simple in the premises
described, but admits that the defendant's agreement has
been fulfilled if he in fact owns a fee simple. Both parties
admit that the only question between them is the question
of the plaintiff's title.

The plaintiff derived title from the will of his uncle, Ed-
mund D. Chesebro. The will contained four sections : the
first bequeathed all the testator's personal property to his
wife Nancy A. Chesebro ; the second gave his wife a life
interest in all his real estate ; the third contained the devise
to the plaintiff on which his title depends ; the fourth ap-
pointed the wife executrix and Gideon P. Chesebro executor.
The will was executed February 17th, 1872. The Gideon P.
Chesebro named in the will, is brother of the testator, is still
living, and has numerous lawful children ; the Daniel Frost
Chesebro named, died in February, 1892 ; the Nancy A.

Chesebro named, died in 1880 ; and all the persons named survived the testator. The will was duly probated May 25th, 1879. After the suit had been entered in the Superior Court, Gideon P. Chesebro was, by order of court, summoned to appear as co-defendant ; he appeared and united with the other parties in the submission of the question in difference between them, on the agreed statement of facts, and in a request to the Superior Court to reserve the question of law arising in said cause and as to what judgment should be rendered therein, for the advice of the Supreme Court of Errors.

*Albert B. Crafts*, for George L. Chesebro *et al.*

*Hadlai A. Hull* and *William F. M. Rogers*, for Gideon P. Chesebro.

*Charles Perrin*, for Peter P. Palmer.

HAMERSLEY, J. The plaintiff's ownership of a fee simple in the land he covenanted to convey to the defendant, is the only question involved in this case ; and that question must be determined by the construction of the third section of his uncle's will, which reads as follows : " I give and bequeath to George Lasher Chesebro, son of Gideon P. Chesebro, after the decease of my Wife, my house and buildings, also all my Real Estate, viz. : All my lands, wherever situated, together with any and all estate, right or interest in lands which I may acquire after the date of this Will to him, his heirs and assigns forever. Yet it is my Will that if the said George Lasher Chesebro dies leaving no heirs, lawfully begotten, then in that case I give the above bequests to Daniel Frost Chesebro, son of Gideon P. Chesebro, to him his heirs and assigns forever. If the said Daniel Frost Chesebro dies leaving no heirs, lawfully begotten, then I give the above bequest to Gideon P. Chesebro, to him his heirs and assigns forever."

It is evident from every part of the will that the testator, or whoever may have been the draftsman, not only endeavored to use legal terms without any definite notion of their

technical meaning, but was also unskilled in grammatical construction and the accurate use of ordinary language. Remembering this, and taking as nearly as possible the standpoint of such a writer who is trying to express the apparent wishes of the testator, we think that as here used, the phrase —I give to George, after the decease of my wife, all my real estate, to him his heirs and assigns forever—means, I give my real estate to George subject to the life estate of my wife; and, whether or not the absolute estate is limited to a fee tail by the following provision, the estate devised vests in George at the death of the testator. In the preceding section, the life estate is given to the wife; and even in the absence of that provision the words would, by implication, give the wife a life estate. In such a case, and in the absence of any provision or circumstance clearly showing a contrary intent, a devisee of the remainder takes a vested interest. *Austin* v. *Bristol*, 40 Conn. 120, 133; *Farnam* v. *Farnam*, 53 id. 261, 278. That the phrase—if the said George dies leáving no heirs lawfully begotten—means leaving no lawful heirs of his body. That the phrase—then in that case I give the above bequests to Daniel Frost Chesebro, to him his heirs and assigns forever—means, in that case I give the said real estate to Daniel Frost Chesebro. A bequest means something left by will, and the "above bequests" must mean the buildings and land above mentioned as left by will to George. That the phrase—" I give the above bequests to Daniel," "I give the above bequest to Gideon," is used with no technical meaning, but is simply an awkward form natural to the draftsman for expressing the testator's wish that the land should go to Daniel, and then to Gideon, only in case of the failure of George to leave issue surviving him. Reading the section thus, the force of the expression in the first clause to pass a fee simple, is restrained by the provision in the clause immediately following, that in case of the death of George without lawful heirs of his body the estate shall go to Daniel; and George takes an estate tail by implication. *Hudson* v. *Wadsworth*, 8 Conn. 347, 357; *Comstock* v. *Comstock*, 23 id. 349, 352; *St. John* v. *Dann*, 66 id. 401, 407; 1 Swift's Dig. 140.

The claim made for the plaintiff, that the death of George referred to is his death before that of the testator or of the widow, is not tenable. The general guide for determining the meaning of any particular will, in speaking of the death of a devisee without explicitly stating whether the death intended is death under all circumstances, or a death before that of the testator, or of a life tenant of the property devised, is uniformly recognized. Where there is simply a devise to *A* and in case of his death to *B*, the time of death referred to is, in the absence of any qualifying words or provisions in other parts of the will, so obviously during the life of the testator, that such construction is always adopted, and upon *A's* surviving the testator he takes an absolute estate; in such case the intent is clear to refer to death under the one circumstance of dying before the testator, and not to death under all circumstances; but that inference does not hold good when all the provisions of the will make apparent an intent of the testator to refer to death under all circumstances. *Webb* v. *Lines*, 57 Conn. 154; *Johnes* v. *Beers*, ibid. 295, 299.

On the other hand, where the limitation over on the death of the first devisee is in case of his death without issue, by a settled rule based also on inherent evidence of intent, the estate in the first devisee is limited to an estate tail, and in such case the time of death referred to must necessarily be death after that of the testator. Here too, if all the provisions of the will clearly indicate a different intent, the usual construction must give way to the actual intent; but the results reached in cases where such controlling intent has been found, must be regarded rather as illustrative of the application of a general rule to special cases, which in the nature of things are rarely exactly duplicated, than as precedents which may safely be developed through the process of analogy. And indeed the reports not infrequently fail to disclose all the elements that affected the special result. In *White* v. *White*, 52 Conn. 518, there was a bequest to several children, and in the event of none of them having issue, a gift over; the court in holding that the children took an abso-

lute estate upon surviving the testator, relied on provisions of the will which made it certain that such was the actual intent. In *Coe* v. *James*, 54 Conn. 511, 512, after a gift to the testator's grandchildren, the will provided that in case they had descendants, their respective shares should go to their descendants, and in case of death without issue, to other members of the family; here the language of the provision itself fairly, if not clearly, referred to death during the testator's life. In *Phelps* v. *Robbins*, 40 Conn. 250, 267, there was a bequest to the testator's two children " and if either shall die leaving issue," his portion was to go to such issue; the court held that such language generally creates an estate tail, but that the whole will showed a different intent; that is, in case either child died before the testator leaving issue, to give its portion to such grandchildren, and so prevent a failure of the devise to their injury. In *Bullock* v. *Seymour*, 33 Conn. 289, the bequest was to the testator's son William, " and in case he should die without children or their legal representatives," then to the testator's legal heirs; the court held that William did not take an estate tail, but a fee defeasible on his dying without children at the time of his death, which became indefeasible on the birth of a child. In *Turrill* v. *Northrop*, 51 Conn. 33, the gift was to the testator's adopted son Gad, and if he " shall die without issue who can inherit," then to the testator's brothers and sisters; the court held that " without issue who can inherit," was equivalent to " heirs of his body lawfully begotten "; that Gad did not take a fee simple defeasible upon death without issue and indefeasible on birth of a child, but did take an estate in fee tail, and that its decision did not conflict with *Bullock* v. *Seymour, supra,* because in that case the court " puts its decision upon the manifest intent of the testator, which it very properly makes the law of the case." *Turrill* v. *Northrop, supra,* assumes that the ordinary legal import of language substantially like that under construction, taken by itself, limits the devise in fee simple to an estate tail; and that such language should be so construed unless inconsistent with the manifest intent of the testator, which is the law of each case. In *Turner* v. *Balfour*, 62 Conn. 89, 92, the

testator in one clause devises land for life to his son David, with remainder to Robert who was the child of another son, and in a subsequent and independent clause says that in case Robert dies leaving no issue, he devises the land to his (the testator's) six children. The only practical question was whether the devise over was void as being the limitation of a fee upon an express fee; the court held that the actual intent, clearly expressed under all the circumstances, was to give Robert either a remainder on the condition of his surviving the life tenant, or a vested remainder which was defeated by his prior death. In *St. John* v. *Dann*, 66 Conn. 401, 407, the gift was to the testator's wife for life, on her death to his son Charles, and in case he should die without issue, to the children of the testator's son George; the court held that Charles took an estate tail, and that the question whether a limitation over in case of the death of a devisee without issue, refers only to the occurrence of the death before that of the testator, "is always one to be determined in view of all the provisions of the particular will under consideration, and the circumstances surrounding the testator."

It is unnecessary to cite further examples. The cases, even if they may apparently differ in the application, are all consistent with the principle—that the governing intent of the testator is an intent expressed in the will consistently with the rules of law; that the meaning of language used cannot be determined by an arbitrary rule of legal definition, but depends in each case on the peculiar provisions and characteristics of the special will, which must to a large extent be its own interpreter, as well as on the circumstances surrounding the testator; and that the qualification of words apt for devising a fee simple, by following words disposing of the estate on the death of the devisee in such terms as imply an interest in the heirs of his body, limits the fee devised to a fee tail, and defines the death of the first devisee as his death under all circumstances, unless such meaning conflicts with other provisions of the will and the surrounding circumstances.

The present case raises a main question different from that in *Turner* v. *Balfour, supra,* and the special facts in the two

cases are unlike in essential features; it differs from several other cases, in that the testator, while intending to benefit the children of his nephew, makes no provision for them in case of a failure of the devise through the nephew's death before his own, leaving issue; so that the language, "without lawful heirs of his body," used in describing the death, can have no effect unless the death referred to is one occurring after that of the testator. There are in this case no conflicting provisions of the will, or surrounding circumstances, which affect the intent to limit the estate devised to George to a fee tail, which is implied in the provision qualifying the words of the original devise; unless, from all the provisions of the will and the meager statement of the surrounding circumstances, it fairly appears as the testamentary scheme that the testator, being without children of his own, wished his landed property to be secured to heirs of his brother, and if possible through one of the two sons named, and so, after providing for his wife by an absolute gift of his personal property and a life interest in his land, gave the whole remainder in fee tail to George and then to Daniel, and in the case of failure of issue in both sons, to his brother. If such wish may properly be inferred, it confirms the primary meaning of the clause in dispute. No other meaning is apparent.

The construction of the will is involved only so far as it affects the present title of George. He does not now own an estate in fee simple; and therefore Palmer was not bound to accept the deed tendered, and pay the price agreed upon for a conveyance in fee simple.

Amicable suits are the mere creatures of statute (General Statutes, § 1200), and must strictly follow the statutory provisions. We do not mean to intimate that Gideon P. Chesebro was properly summoned into court after this suit had been entered; but the record shows that he subsequently voluntarily became a party to the agreed case, and no question as to the procedure is before us.

The Superior Court is advised to render judgment for the defendant.

In this opinion the other judges concurred.