GEORGIE L. BUTLER, EXECUTRIX, *vs.* ALBERT F. FLINT,
ADMINISTRATOR, ET ALS.

Third Judicial District, Bridgeport, April Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Ambiguous language in a will is to be construed in harmony with the intent of the testator as disclosed by the written instrument itself, when read in the light of circumstances surrounding him at the time of its execution.

One of the artificial rules designed to aid in the search for testamentary intent, is that where there is a devise to one and in case of his death to another, the time of death referred to—in the absence of qualifying words or other indication of a contrary intent—is death before that of the testator; but where the devise is to one and in case of his death without issue to another, the presumption is that the death of the first devisee without issue has reference to his decease at any time. Such artificial rules of presumption are, however, of no importance when the intent of the testator is otherwise disclosed.

In the present case a testator having given property to a niece of his wife, by his will made only eleven days before his death, afterward added a codicil in which he provided that in case the niece, then about eleven years old, "should die without leaving children or issue," the property given to her in his will should go to the children of his brother and their heirs in equal shares. *Held:*—

1. That in the light of these facts the intent of the testator to secure the property, in case of the contingency mentioned, to persons of his own blood was sufficiently apparent, and therefore, to accomplish that end the provision must be construed to refer to the death of the niece without children at any time, whether before or after the testator's own death.

2. That all gifts made by the will in favor of such niece of his wife came within the scope and operation of the codicil.

3. That the gift over to the children of the testator's brother, all of whom were living when the will was executed and when it took effect, was not in contravention of the then existing statute against perpetuities.

4. That whether the will made an alternative gift to the "heirs" of his brother's children, and its validity if made, were unimportant questions, because of the prior vesting in said children of estates which became indefeasible upon the death of the testator's niece without issue.

The case of *Lawlor* v. *Holohan*, 70 Conn. 87, criticised and limited.

Argued April 12th—decided June 1st, 1917.

APPEAL from two orders and decrees of the Court of Probate for the district of New Haven determining the distributees of certain testamentary funds and directing their distribution accordingly, taken by the plaintiff to and reserved by the Superior Court in New Haven County, *Case, J.*, upon an agreed statement of facts, for the advice of this court.

Samuel R. Hotchkiss, of New Haven, died October 30th, 1844, without issue. He was survived by his widow, Sarah Hotchkiss, and his next of kin and heirs-at-law were his brother Horace R. Hotchkiss, now deceased, and Harriet E. H. Keep, daughter of a deceased sister. At the time of Samuel's death his brother Horace had four living children, Charles S., James B., Emma, and Harriet E. No child was subsequently born to him. They are now deceased, and the administrators of their several estates are the parties defendant.

Samuel left real and personal estate and a will, duly probated, executed October 19th, 1844, and a codicil thereto executed October 26th, 1844. By the first paragraph of his will he gave $2,000 absolutely, and the use of all the balance of his property, to his widow for life or during widowhood. By the six following paragraphs he made various bequests, subject to the interest of the widow, to sundry persons and charitable institutions. By the eighth and tenth paragraphs he gave the remainder over in sundry pieces of real estate, to his niece Harriet E. H. Keep. The ninth paragraph reads as follows: "I give and devise to Sarah V. H. Butler, the niece of my wife, and to her heirs, all my right and interest in the house and land, where my mother now lives—and also the east half of my garden lying next west of and adjoining said house, except a small undivided piece of land at the northeast corner, and I direct my said executors to purchase for said

Sarah V. H. Butler, the remaining rights and interest in said house and land, with the property of my estate, provided it can be bought at a price which they think reasonable, which when purchased, I devise. to said Sarah V. H. Butler and to her heirs—and in case they cannot purchase said right as above, then I direct them to purchase or build for the said Sarah, a suitable and comfortable house and lot of land, for which they are to pay from two to three thousand dollars from my estate at their discretion, which last mentioned house and land, I devise to said Sarah V. H. Butler and to her heirs; and in that case she is not to have my interest in the house and land where my mother lives, and said east half of my said garden—but the same shall belong to the residue of my estate hereinafter disposed of."

The eleventh and final disposing paragraph is as follows: "All the rest and remainder of my property of every kind and nature, after the above legacies and devises are fully paid and satisfied, I give and devise to the said Harriet E. H. Keep, and to the said Sarah V. H. Butler and to their heirs, to be equally divided between them share and share alike."

The codicil, after republishing and reaffirming the will except as therein altered, provides for the payment to his mother of $100 annually during her life, and then proceeds as follows: "With respect to the property and estate which in said will, I have given to Harriet E. H. Keep and to Sarah V. H. Butler, it is my will that in case *either of them* should die without leaving children or issue at the time of their respective deaths, that then the property and estate given in said will to the one so dying without children or issue should go to the children of my brother Horace and their heirs, and in such case I hereby give and devise the same to the children of my brother Horace and to their heirs to be equally divided among them."

The real estate, which is the subject-matter of the provisions of the ninth paragraph, has been sold under the authority of a resolution of the General Assembly of 1848. A portion of the proceeds of that sale, determined upon and set apart by the Court of Probate, forms the fund now in the hands of the Union and New Haven Trust Company, as trustee, and is one of the two funds now in controversy. The other fund in its hands as administrator represents one half of the rest and residue given by the eleventh paragraph.

Sarah Hotchkiss died in 1845. Sarah V. H. Butler, who was her niece, survived until June 11th, 1915. Georgie L. Butler, as executrix of her will, is the plaintiff herein. She claims that the two funds in the hands of the Trust Company form a part of Sarah Butler's estate, which she, in her capacity as executrix, is entitled to receive. The defendants, as administrators of the estates of the several children of Horace R. Hotchkiss, claim to be entitled to these funds in equal shares between them. The Court of Probate decided in favor of the latter contention, and passed its order of distribution accordingly. Other facts appearing of record are sufficiently stated in the opinion.

*George E. Beers*, with whom was *Noah H. Browning* of Hudson, New York, for the plaintiff.

*Albert F. Flint* of Boston, Massachusetts, and *Thomas Hooker, Jr.*, for the defendants.

PRENTICE, C. J. The property now in the hands of the Trust Company as administrator and trustee, in the form of cash awaiting distribution to its ultimate owners, represents that given to Sarah V. H. Butler by the ninth and eleventh paragraphs of the will, and confessedly is to be distributed as the property so given would have been if it had not been converted.

The gifts made in these paragraphs in Sarah Butler's favor are undeniably absolute or in fee, subject to the use of the testator's widow long since terminated by her death. Were there no codicil, the two funds now involved, standing as they do in the place of the original property bequeathed and devised, would belong to her estate, since she survived him.

By the codicil, provision is made for a different disposition should Sarah Butler die without leaving a child or issue at the time of her death, to wit, to the children of the testator's brother Horace and their heirs. By force of this provision, and by reason of the fact that Sarah Butler died without issue, the administrators of Horace's four children, all of whom survived the testator, claim to be entitled to the two funds, and the Court of Probate, in passing the order appealed from, accepted that view.

The issues presented by the conflicting claims of the parties involve three controlling inquiries: (1) Does the language of the codicil, descriptive of the contingency upon the happening of which the gift to the children of Horace is made to become operative, refer to the death of Sarah Butler at any time, or only to her death before that of the testator? (2) If Sarah Butler's death at any time is the contingency specified in the codicil, is the subject-matter of the gift over, to the children of Horace, comprehensive of that included in the gifts in favor of Sarah Butler contained in both paragraphs nine and eleven, or only in one of them? (3) If the gift to the children of Horace, as made, was one to take effect in the contingency of Sarah Butler's death whenever occurring, was it a valid or void one in view of the statute against perpetuities in force at the time the will was executed?

It is evident that the testator, when he determined to make a codicil to his will, executed only seven days

previously, was influenced by some purpose to change his provisions in respect to some matter which he regarded of sufficient importance to justify him in that act. That he intended to make a change in his dispositions previously made in favor of Harriet Keep and Sarah Butler, is clear. The only question is as to the nature and extent of that change. Unfortunately the language used by him to express his purpose is susceptible of two constructions. The question, therefore, like all others where the construction of testamentary provisions is concerned, is one whose answer is to be found in the testator's intent, to be gathered as best it can from the will and codicil themselves when read together and in the light of the circumstances surrounding him at the time of their execution.

Certain artificial rules are found in the books designed to aid in the search for testamentary intent. One of these has had our repeated approval, to wit, that where there is a devise to A, and in the case of his death to B, the time of death referred to, in the absence of qualifying words or other indication of a contrary intent, is death before the testator's. *Chesebro* v. *Palmer,* 68 Conn. 207, 211, 36 Atl. 42; *Webb* v. *Lines,* 57 Conn. 154, 156, 17 Atl. 90; *Johnes* v. *Beers,* 57 Conn. 295, 303, 18 Atl. 100. In *Lawlor* v. *Holohan,* 70 Conn. 87, 90, 38 Atl. 903, this rule of presumption was extended so as to be inclusive of cases where the devise is to A and in the event of his death without issue to B, and the statement was made that the rule thus broadly expressed is the well-settled one of this jurisdiction. This statement of principle is invoked by the plaintiff. An examination of the eight cases cited in support of the assertion made in *Lawlor* v. *Holohan,* shows scant basis for it. Some of them are cases of the first class above referred to, and no broader rule of presumptive construction is either applied or stated than one per-

tinent to such a situation. Nearly all the others were disposed of upon the strength of the affirmative evidence of intent disclosed by the will, and without appeal to any rule of presumption whatsoever. The last one of the eight is *Chesebro* v. *Palmer,* with its strong assertion of a doctrine quite contrary to that of *Lawlor* v. *Holohan.* In the former case the general subject involved had a full and exhaustive discussion. The conclusion was reached that cases where the gift over is made in the contingency of the death of the first devisee without issue, are to be distinguished from those where the contingency is the death of the first devisee merely; and that the rule of presumption to be applied in the former class of cases, in the absence of other indication of testamentary intent, is that the death without issue of the first devisee has reference to his death under all circumstances. p. 213. The essential difference between the two classes of cases, pointed out in *Chesebro* v. *Palmer,* needs only to be called to one's attention to be appreciated, and the difference in the pertinent rule of construction applicable to each follows as a logical consequence.

In the present case, however, we are not driven to rely upon a rule of presumption. Such rules are helpful when the intent of the testator is not otherwise disclosed, but shorn of importance when it is. *Chesebro* v. *Palmer,* 68 Conn. 207, 213, 36 Atl. 42; *Lawlor* v. *Holohan,* 70 Conn. 87, 90, 38 Atl. 903; *St. John* v. *Dann,* 66 Conn. 401, 409, 34 Atl. 110.

The present record is not as informing as it might be of facts pertinent to an inquiry as to the testator's intent, but they are by no means wanting. The will was executed only eleven days before the testator's death, and the codicil four. Whether or not its execution was in anticipation of the early death which so soon followed, we have no knowledge save as the facts

stated may furnish an indication. Both Sarah Butler and Harriet Keep, whose name is associated with hers in the residuary gift and in the codicil provision, were, at the time the will was made, minors, neither of them over seventeen years of age. Sarah Butler was not more than eleven. The latter young woman was not related by blood to the testator, but was a niece of his wife. Harriet Keep was his niece and one of his two heirs-at-law, the other being Horace R. Hotchkiss, whose children were made beneficiaries of the limitation over in the codicil.

It will be noted that under the will and the statute then in force (Title 31, Chap. 1, § 4, Compilation 1838), the gifts to Sarah Butler, in the event of her decease before the testator, would have lapsed, and the property given to her have passed to his next of kin as intestate estate. In the event of her death after his, the property would have passed by inheritance to her heirs, who were strangers to his blood, and presumably occupied a very different position in his regard from that occupied by his next of kin, all remembered in his will. That was a result which he might well have desired to avoid. By the terms of the codicil, interpreted as a provision for the contingency of Sarah Butler's decease whenever occurring, it would have been avoided, and the property given to her secured, in that event, to persons of his blood.

Reading the will and codicil in the light furnished by these facts, we are unable to escape the conclusion that the testator's intent in the making of his codicil was to provide for the contingency of Sarah Butler's death whether before or after his own, and especially in the latter event, and that such intent is sufficiently apparent to call for that construction of his language.

The language of the codicil is too definite and distinct to admit of doubt or uncertainty as to the com-

prehension of the subject-matter of both the gifts in favor of Sarah Butler, contained in the ninth and eleventh paragraphs of the will, within the scope and operation of the codicil. When the testator makes provision "in respect to the property and estate which in said will I have given to Sarah V. H. Butler," there is neither ambiguity nor lack of precision in his language, and there is nothing to indicate that it was used to convey any other than its ordinary and natural meaning.

The only gift expressed in that portion of the codicil under review is one to the children of the testator's brother Horace. Horace was then living; so were all of his children, and he and they all survived the testator. That gift in itself certainly did not contravene the statute against perpetuities. The donees were competent to take whenever the time should come, if it ever should, when their right to do so had become fixed by the happening of the contingency specified. In so far as the gift to these children cut down or changed the character of those in favor of Sarah Butler contained in the will, so that the will, when read in connection with the codicil, was made to bestow something less than a fee in lands and an absolute estate in personalty, it appears that any possible invalidity attached to the title thus attempted to be bestowed could not reach the estate given to Sarah Butler. Whether or not the language of the will is capable of a construction by which an alternative gift was made to the "heirs" of Horace's children in the event that the children should die not having taken a vested estate, and whether or not such gift, if made, would be a valid one, are wholly unimportant questions. Horace's children having survived the testator, lived to take a vested interest which, upon Sarah Butler's death without issue, became an indefeasible, absolute estate.

The Superior Court is advised to render judgment affirming the order and decree of the Court of Probate.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.