PHOENIX STATE BANK AND TRUST COMPANY, TRUSTEE (WILL OF RUTH K. GAYLORD) *v.* HELEN G. JOHNSON ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 4—decided July 12, 1945.

*Spencer Gross,* for the defendants Sarah L. Arms et al.

*Alexander W. Creedon,* with whom, on the brief, was *Thomas F. Gallivan, Jr.,* for the defendants Helen G. Johnson et al.

*Cyril Coleman,* for the defendants Theodore B. Hodges et al.

*William A. Reiner,* pro se, guardian ad litem for unborn persons.

*Lilian B. Hodges, Etta Loudenslager* and *Emily B. Ralston,* defendants, filed a brief pro se.

MALTBIE, C. J. The principal question at issue upon this reservation, arising out of certain provisions in the will of Ruth Katharine Gaylord, is whether her aunt is by implication given a life use of the residue of the estate. The particular portions of the will involved are these: "FIFTH. If my mother, Katharine Arms Gaylord, should survive me, I give, devise and bequeath to my said mother all the residue of my property of whatever kind, and wherever it may be situated, to have the use and income thereof during her natural life. SIXTH. If my mother should not survive me, I give, devise and bequeath all of said residue to my Aunt, Sarah Lucy Arms, to have the use and income therefrom during her natural life; at the death of the survivor of my said mother and said aunt or at my own death, if both should die before me, I give, devise and bequeath all of said residue to my grandmother, Sarah Phelps Arms, to have the use and income thereof during her natural life; either my said mother or my said aunt or my said grandmother, while life tenants of said property, shall have the right to draw and use any part of the principal of said property which in the judgment of my executor, hereinafter

named, shall be necessary for her support and reasonable comfort; at the death of all of the said life tenants, or at my own death, if none of them should survive me, I direct that distribution of said residue should be made as follows:" Then follow a large number of gifts of sums of money and articles of personal property, with a concluding provision that "all the residue and remainder of my estate of whatever kind and wherever it may be situated, including any devise, or legacy given above, which may have lapsed" should be distributed among certain named cousins or their children. The concluding article of the will was as follows: "NINTH. And I do hereby nominate and appoint the Phoenix State Bank and Trust Company of Hartford, Connecticut, to act as Trustee of my Last Will and Testament whenever and wherever the services of a Trustee may be required for the purpose of carrying into effect any of the provisions set forth therein." The testatrix' grandmother predeceased her. Her mother survived her, and received the income of the trust, and had the use of certain personal property, until she died on October 1, 1943. The testatrix' aunt is still living. The dispute between the parties arises out of the fact that, while the will gives to the mother the life use of the residue of the estate if she outlives the testatrix and expressly gives life uses to the aunt and grandmother if the mother should not survive the testatrix, it makes no express provision for the disposition of the income and use of the residue in the event which has happened, namely, the mother surviving the testatrix but dying before the aunt.

The testatrix was a resident of Florida when, in 1928, she died, and her will was admitted to probate there and letters testamentary were issued to the executor named in it. The bulk of the testatrix' property, consisting of stocks and bonds, was in Hartford

at the time of her death and thereafter. A return by the executor to the Probate Court in Florida, approved by it, shows that all debts were paid, and the executor's final return shows a transfer, on December 2, 1930, of stocks, bonds and other property to the value of about $200,000 to the plaintiff as trustee under the fifth article of the will. The Florida court, on January 20, 1931, passed an order which recited that the estate had been satisfactorily administered and which discharged the executor of his trust. The court advised the executor that it would not take jurisdiction of the trust under the fifth and sixth articles because the location of the property was in Connecticut. The executor then petitioned the Probate Court for the district of Hartford for ancillary letters testamentary, which were granted to him on April 16, 1931. On June 3, 1931, he filed an inventory of the property that had been delivered to the bank, and it qualified as trustee. Certain of the parties claim that the determination of the questions at issue is to be governed by the law of Florida. No decision of the Supreme Court of that state has been cited to us, nor have we found any, which has anything more than an incidental bearing upon the issues before us. Under these circumstances, there is no need to decide whether or not the law of Florida would be controlling. As in this state, so in Florida, the principles of the common law are in force unless they have been modified by legislative action or are unsuited to local conditions. *Stewart* v. *Stearns & Culver Lumber Co.*, 56 Fla. 570, 586, 48 So. 19, 24 L. R. A. (N.S.) 649. We can assume that the law of Florida is like our own, and determine the issues upon that basis. *American Woolen Co.* v. *Maaget*, 86 Conn. 234, 243, 85 Atl. 583; *McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 177, 132 Atl. 902.

The contention advanced in behalf of the aunt is

that she is by implication given the life use of the property upon the death of the testatrix' mother, even though the mother survived the testatrix. When, by the terms of a will, a gift in remainder is made, to take effect at the death of a certain person, without any express gift of a life use to that person, the question whether such a gift will be implied may be presented in either of two situations. In one, there is nothing in the will to indicate the testator's intent except the fixing of the time when the remainder will take effect as at the death of that person; and in the other, while there is no express gift of the life use, there are expressions in the will which, to some extent at least, indicate an intent to make such a gift. In a few of our decisions, we have dealt with the former situation; in one we held that a gift of a life use was implied; *Holbrook* v. *Bentley,* 32 Conn. 502, 507, and in two we stated, wholly by way of obiter dicta, that a gift would be implied; *Chesebro* v. *Palmer,* 68 Conn. 207, 210, 36 Atl. 42; *Riverside Trust Co.* v. *Rogers,* 89 Conn. 690, 694, 96 Atl. 180; but the lack of citation of authority in these cases, upon a question as to which there is a sharp cleavage of judicial opinion, would require careful consideration before we could now give effect to the rule stated in them. The relevant portion of the opinion in the case of *Glover* v. *Stillson,* 56 Conn. 316, 320, 15 Atl. 752, cited in behalf of the aunt, can be given little weight as an authority because of the failure in it to state the ratio decidendi. In this case we have, however, no need to determine the correct rule in such a situation.

When there is no express gift of the use of the property during the life of the person at whose death the remainder takes effect but there are words in the will indicative of an intent to give the life use to that person, a gift to him will be implied if, in view of all the

provisions of the will and the surrounding circumstances, the court is convinced that the testator so intended. *Jones* v. *Gane,* 205 Mass. 37, 45, 91 N. E. 129. Most of our decisions in which gifts have been implied fall within this category. *Ingersol* v. *Knowlton,* 15 Conn. 468, 473; *Minor* v. *Ferris,* 22 Conn. 371; *Peckham* v. *Lego,* 57 Conn. 553, 560, 19 Atl. 392; *Beers* v. *Narramore,* 61 Conn. 13, 17, 22 Atl. 1061; *Mansfield* v. *Mix,* 71 Conn. 72, 76, 40 Atl. 915. The only disagreement among the courts is as to the test to be applied in determining whether a gift will be implied. In *Wilkinson* v. *Adam,* 1 V. & B. 422, 466, 35 Eng. Rep. R. 163, Lord Eldon stated: ". . . necessary Implication means, not natural Necessity, but so strong a Probability of Intention, that an Intention contrary to that, which is imputed to the Testator, cannot be supposed"; and it has not infrequently been stated that this is the test to be applied in determining whether a gift will be implied. *Daly* v. *Rogers,* 132 N. J. Eq. 200, 205, 27 Atl. (2d) 885; *Hunter* v. *Miller,* 109 Neb. 219, 224, 190 N. W. 583; 2 Page, Wills (3d Ed.), § 930; 2 Jarman, Wills (7th Ed.), p. 606. However, there has been a decided variance in the statements of the requirements which will suffice to give rise to the implication, even at times in different decisions of the same court. *Boston Safe Deposit Co.* v. *Coffin,* 152 Mass. 95, 100, 25 N. E. 30; *Bond* v. *Moore,* 236 Ill. 576, 580, 86 N. E. 386; *Brown* v. *Quintard,* 177 N. Y. 75, 84, 69 N. E. 225; *Estate of Blake,* 157 Cal. 448, 468, 108 Pac. 287. In *Weed* v. *Scofield,* 73 Conn. 670, 678, 49 Atl. 22, we said: "The probability, indeed, on which is rested a devise or bequest by implication must be apparent, and not a mere matter of conjecture; but it need not, even as against the heir, be necessarily such that from the words employed an intention to the contrary cannot be supposed."

There is, indeed, no generally accepted formula which would reconcile the variant statements in the opinions of the courts, but in this case that does not cause us concern.

The division of the provisions of the will into the two articles "Fifth" and "Sixth" appears quite adventitious. While the fifth article applies only in the event that the mother survived the testatrix, there are provisions in the sixth article to which the introductory words of that article, "if my mother should not survive me," are clearly inapplicable. For example, the will, in making provision for the grandmother, states that she is to have the life use on the death of the survivor of the mother and aunt, "or at my own death, if both should die before me"; and, if it had been intended that the introductory clause, "if my mother should not survive me," should apply throughout the paragraph, then the proper provision here would have been that the grandmother would take if the aunt should die before the testatrix. The provisions for the disposition of the property to the remaindermen "at the death of all of the said life tenants, or at my own death, if none of them should survive me," clearly apply to the situation expressly referred to in the fifth article, the mother surviving the testatrix, because otherwise, should the mother survive, there would be no disposition of the remainder at her death. The significance of these considerations lies in the use by the testatrix of the words "life tenants," both with respect to the right to use the principal and in the last provision we have quoted. If these provisions are divorced, as they must in reason be, from the introductory words of the sixth article, "if my mother should not survive me," then the testatrix is definitely, and not conditionally, referring to both her aunt and her grandmother as "life tenants" of the

property and including them in the same category in that regard as the mother. There is here a strong indication that, even if the mother survived the testatrix, the aunt and the grandmother were regarded by the testatrix as persons who, if they outlived the mother, would, in succession, have the use of the property.

While the relationships between the testatrix and her mother, aunt and grandmother are by no means as fully described in the stipulation for a reservation as they might well be, it does appear that for a number of years prior to the death of the testatrix the four had lived together as one household. It also has some significance that, shortly after the testatrix made the will before us, her mother, by trust indenture, provided that the aunt should have a life use of a fund amounting at the time of the reservation to about $70,000, with a right also to have the benefit of so much of the principal as might be necessary for her maintenance and support, and that the mother subsequently, by will, gave the aunt the life use of all the property she owned at her death, with the right to use so much of the principal as she desired. If we turn to other provisions of the will, we find that, in the second article, the testatrix gave her mother all her real estate in fee simple, but, if her mother did not survive her, then it was given to the aunt, and, if neither the mother nor the aunt survived the testatrix, then to the grandmother; in the third article, she made a number of pecuniary legacies, the largest one, $10,000, to the aunt; and, in the fourth article, she made provision for the maintenance of a bed in a children's home, in memory of herself and her grandmother. Certainly, from the facts stipulated and from the provisions of the will as a whole, there is every reason to believe that, after her mother, the persons whom the testatrix

would most wish to benefit would be her aunt and her grandmother. She expressly provided that, if her mother did not survive her, the aunt and grandmother should have life uses of the property. As between the two, she clearly preferred the aunt. Yet, by the second clause of the sixth article, read, as we have said it must be, apart from the introductory words in that article, the grandmother, if she survived the aunt, would have the life use of the property, whether or not the testatrix' mother survived her; and if, then, the aunt would take no interest if the mother survived the testatrix, the effect is to attribute to the testatrix a purpose directly opposed to her clear preference. Finally, there is no conceivable reason why, if the testatrix desired that, should her mother die before her, the aunt should have the life use of the property, she should not wish her to have that use should the mother survive the testatrix but die before the aunt. The reference in the will to the aunt as a "life tenant," its other provisions and the surrounding circumstances together are sufficient to meet even the most rigid test of a bequest of the life use by implication.

The aunt is entitled to the use of "all the residue" of the testatrix' property as these words are used in the fifth article. As the testatrix, in the previous articles of the will, made no bequests of her personal effects, these would be included, with the usual incidents attached to a life use of such property. We have already stated that, in using the words "life tenants" in the sixth article, the testatrix intended to include the aunt, and the latter would, therefore, have the right to the benefit of the principal given to life tenants in that article.

To question (b) in the stipulation for reservation, asking whether Sarah Lucy Arms is entitled to receive the income of the trust for her life, we answer "Yes."

To question (f), asking whether she has the right to draw and use any part of the principal which, in the judgment of the trustee, is necessary for her support and reasonable comfort, we answer "Yes." To question (g), we answer that she has the right to the life use of the testatrix' personal effects, with the usual incidents attaching to a life use of such property. There is no need to answer the other questions.

No costs will be taxed in this court to either party.

In this opinion BROWN, JENNINGS and DICKENSON, Js., concurred; ELLS, J.. dissented.